MAYNARD H. MURCH vs. PETER P. SWENSEN.

May 7, 1889.

**Fraudulent Sale—Declarations of Seller in Possession.**—Where the debtor remains in possession of property which once belonged to him, and which his creditor seeks to reach as fraudulently transferred, his acts and declarations, while thus in actual possession, tending to characterize his possession, are admissible in evidence against the vendee.

**Same—Requisites of Change of Possession.**—The change of possession required by Gen. St. 1878, c. 41, § 15, must be actual and continued. A mere formal and constructive taking of possession, and then leaving the property in the actual possession of the vendor, is not enough to exclude the presumption of fraud on creditors.

**Same—Rights of Subsequent Creditors.**—A sale of chattels not followed by an actual and continued change of possession is presumptively fraudulent, not only as to existing creditors at the time of the sale, but also as to those who become creditors of the vendor at any time while the property remains in his possession. Gen. St. c. 41, § 16.

Appeal by defendant from an order of the district court for Hennepin county, *Young*, J., presiding, refusing a new trial after verdict directed for plaintiff.

*Henry J. Gjertsen*, for appellant.

*Davis & Farnam*, for respondent.

MITCHELL, J. Action for the wrongful taking and conversion of a sum of money on August 19, 1887. The defendant justifies the taking as sheriff under an execution against the property of one J. H. Murch, plaintiff's brother. As the money, which was taken from the drawer in a saloon, was admitted to be the proceeds of sales of the stock of liquors contained in it, the sole question was whether this

stock was, as to creditors of J. H. Murch, his property, or that of plaintiff. Plaintiff, who is a non-resident, was not present or a witness at the trial. His brother, the defendant in the execution, was the principal witness in his behalf. He testified, in substance, that he had been engaged in the saloon business at this same stand for some time as proprietor, but that about August 1, 1886, he had sold out the whole business to plaintiff, who paid him therefor $2,000; that plaintiff was here temporarily at the time of the sale, and "took possession" of the property, but "was called away, and left witness in possession;" that "he has been away since;" that he (witness) "continued to run the business just the same;" that "he continued to conduct the business pretty near the same for his brother as he did before this transfer." In fact, the evidence shows that the business was run by J. H. Murch after the alleged transfer precisely in all respects as before, without any apparent change of possession or proprietorship, except that the word "agent" was attached to his name on the saloon window. There was not a word of evidence produced as to how or on what terms he was conducting the business for his brother, or how the latter, a non-resident, came to engage in the saloon business in Minneapolis. Neither was there a particle of evidence that from the day he left the state, shortly after the pretended transfer, down to the day of trial, he ever personally took part in or interested himself in the business. On cross-examination witness was asked whether, from August, 1886, to August, 1887, his brother had any license to sell liquor at the place, and whether he (the witness) did not procure the license in his own name. This the court excluded. The defendant also offered to prove that while J. H. Murch was thus in possession of the property, and as late as July, 1887, he applied in his own name for a license to sell liquor at that place, and also while thus in possession he claimed to be proprietor, and had letter-heads and cards printed for use in the business, on which were the words "J. H. Murch, Proprietor." The defendant also offered in evidence the license issued to J. H. Murch on July 20, 1887, and posted up in the saloon continuously from that date to the date of the levy. All of this the court excluded, and, when the evidence closed, directed a verdict for plaintiff.

All of these rulings were, in our opinion, erroneous. While it is true, as a general rule, that the declarations of a vendor after sale and *delivery of possession* cannot be given in evidence against the vendee, yet it is equally true that, where the assignor continues in possession of the assigned property, his acts and declarations, while thus in actual possession, tending to characterize this possession, may be given in evidence. As proof of continued possession of the vendor is competent evidence to impeach the transfer, it logically follows that any acts or declarations of the possessor, while so retaining the property, must also be competent as characterizing his possession. These are received in such cases upon the ground that they show the nature and object of the act which they accompany, and which is the subject of the inquiry. They are admitted as part of the *res gestæ;* for, so long as the debtor remains in possession of property which once belonged to him, the *res gestæ* of the fraud, if any, may be considered as in progress, and his declarations, though made after he has parted with the formal paper title, may be given in evidence in favor of the creditor and against the vendee, by reason of the continuous possession which accompanied them. See Wait, Fraud. Conv. § 279, and cases cited. Most, if not all, of the evidence excluded was admissible on this ground.

The court also erred in directing a verdict for plaintiff. Every sale by a vendor of goods and chattels in his possession or under his control, unless the same is accompanied by an immediate delivery, and followed by an actual and continued change of possession, of the things sold, is presumed fraudulent and void as against the creditors of the vendor, unless those claiming under the sale make it appear that the same was made in good faith, and without any intent to hinder, delay, or defraud such creditors. Gen. St. 1878, *c.* 41, § 15. The statute is imperative that the change of possession necessary to exclude this presumption of fraud must be actual, and not merely constructive, and continuous. A mere formal and constructive taking possession, and immediately leaving the property in the actual possession of the vendor, (which is the most that can be claimed for the evidence in this case,) is not enough to prevent the presumption of fraud from obtaining. Wait, Fraud. Conv.

§§ 257, 259.   The burden was therefore on plaintiff to make it appear that this sale was made in good faith, and not with fraudulent intent.   The evidence on that point, so far from being conclusive, was of the most unsatisfactory and suspicious character.   The transaction had many of the familiar ear-marks of sham and colorable transfers, and the defendant was certainly entitled to have the question of its *mala fides* or *bona fides* submitted to the jury.

. The point is also made that defendant is not in position to attack the character of the transfer, because it did not appear that the plaintiff in the execution was an existing creditor at the date of the sale. Without going generally into the consideration of the question when subsequent creditors will be let in or allowed to avoid a transfer as · fraudulent, it is enough to say that the word "creditors," as used in this statute, includes all persons who are creditors of the vendor at any time while the property remains in his possession or under his control.   Gen. St. 1878, *c.* 41, § 16.   This is doubtless upon the idea that continuance of possession in the vendor is "a sign of trust," and hence presumptively the property still belongs beneficially to him.

·Order reversed.