CHICKERING & SONS *vs.* JOHN W. WHITE.

February 7, 1890.

**Trial by Court—Motion for Judgment on Plaintiff's Evidence.—**In an action tried by the court the plaintiff introduced evidence which would have supported a decision of the issues of fact in its favor, and rested. Thereupon the court, on motion of defendant, "ordered judgment in favor of defendant upon the evidence introduced by the plaintiff." *Held* error.

**Fraudulent Sale—Change of Possession.—**What constitutes "actual and continued change of possession" necessary, under Gen. St. c. 41, § 15, to exclude the presumption of fraud as to creditors, defined. Following *Murch* v. *Swensen*, 40 Minn. 421.

**Same—Change Required by Insolvent Law.—**To constitute a "delivery or change of possession," under the fourth section of the insolvent law, (Laws 1881, c. 148,) there must be an actual delivery and change of pos-

session. A mere symbolical delivery and constructive change of possession is insufficient.

**Same—When Contract of Sale is Oral.**—The provisions of the second clause of this section are not limited to cases where the contract of sale or conveyance is in writing. To take a sale out of the operation of this clause, the vendee must either have taken possession of the property, or have filed a written instrument containing the conveyance or grant.

**Same—Transfers with intent to Prefer a Creditor.**—The words "such conveyances," used in the second clause of this section, refer to those described in the first clause, to wit, (1) those made by an insolvent debtor, in contemplation of insolvency, with a view of giving a preference, (2) to a creditor, having reasonable cause to believe that such debtor is insolvent. Modifying *Weston* v. *Sumner*, 31 Minn. 456.

Appeal by plaintiff (a corporation) from a judgment of the district court for Ramsey county, where the action (brought to recover 30 pianos, made by plaintiff, and of the alleged value of $15,900) was tried by *Vilas*, J., and judgment ordered for defendant at the close of plaintiff's case. The evidence for the plaintiff tended to prove that on August 16, 1887, the pianos were sold to plaintiff, at St. Paul, by Petersen & Blaikie, under the following circumstances: Some months prior to that date the pianos had been sold by plaintiff to Petersen & Blaikie, and shortly before that date Petersen (one of that firm) had resolved to move to New York and become a partner in a firm of piano-makers, continuing, however, to carry on his St. Paul business, which was to be left in charge of Blaikie. The plaintiff was dissatisfied with this proposed arrangement, and sent its agent to St. Paul, who verbally agreed with Petersen (acting for his firm) that the stock "should be turned into a consignment account," the plaintiff to retain, as accommodation paper, the notes that had been given on account of the price. The agent declined to make any arrangement as to future business, or even to agree that the pianos thus left on consignment should remain with Petersen & Blaikie. The pianos were at the time in the latters' ware-room, and the numbers were checked off, and the pianos set apart as the property of plaintiff. Plaintiff and its agent believed Petersen & Blaikie to be then solvent, and had no reason to believe the contrary; and Petersen also

believed himself and his firm solvent, and had no contemplation of insolvency or any purpose of preferring plaintiff. He consulted and acted on the advice of counsel, who advised that the arrangement was an entirely proper one, and that no change from a purchase account to a consignment account needed to be made on the firm's books, and accordingly none was made. On October 11, 1887, Petersen & Blaikie made an assignment to defendant under the insolvent law.

*H. J. Horn,* for appellant.

*John W. White (pro se)* and *John D. O'Brien,* for respondent.

MITCHELL, J. This action was brought to recover possession of a number of pianos which plaintiff had once sold on credit to Petersen & Blaikie, but which it claimed to have bought back from them on August 16, 1887. The defendant, as assignee, claimed the property as part of the assets of Petersen & Blaikie, under an assignment for the benefit of creditors made October 11, 1887, pursuant to the provisions of the insolvent law, (Laws 1881, *c.* 148;) his contention being that the alleged resale of the property by Petersen & Blaikie to plaintiff was void as to creditors, *first,* under the statute of frauds, (Gen. St. *c.* 41, § 15,) because there had been no actual and continued change of possession; and, *second,* under section 4 of the insolvent law, as a preferential conveyance. The case was tried by the court without a jury. The plaintiff introduced its evidence, and rested. Thereupon the defendant "moved for judgment in his favor upon the evidence introduced by the plaintiff," which motion the court granted, and ordered judgment for the defendant as prayed for in his answer, to which ruling the plaintiff excepted; and upon that order judgment was entered adjudging that plaintiff take nothing by its action, and that defendant is entitled to the possession of the property. From this judgment plaintiff appeals.

The practice adopted in this case was unauthorized and irregular, unless the motion for judgment be considered as merely one for a dismissal of the action. *Woodling* v. *Knickerbocker,* 31 Minn. 268, (17 N. W. Rep. 387;) *Duluth Chamber of Commerce* v. *Knowlton, supra,* p. 229. In this case it was evidently intended and understood to be a motion for a judgment on the merits. The court may order judgment on the pleadings, but not on the pleadings and *evi-*

*dence.* Where the determination of a case is upon the merits, upon the evidence, there should be a verdict or findings as a basis for the judgment; otherwise the record will fail to show anything upon which the judgment rests. When a plaintiff rests, the defendant has the choice of one of two courses to pursue,—*first*, to move for a dismissal of the action, if he thinks the plaintiff has failed to prove a cause of action, or if he desires a determination upon the merits; *second*, to introduce his evidence, or, if he deems this unnecessary, rest without doing so, and have a verdict or findings. Plaintiff waives any mere technical objection to the practice adopted in this case, but contends that the motion for judgment is to be considered as in the nature of a demurrer to the evidence under the old practice, and that the order for judgment, analogous to directing a verdict, is tantamount to a ruling that upon the evidence submitted the defendant was, as a matter of law, entitled to a decision in his favor. On the other hand, defendant seems to view the order for judgment as equivalent to a general finding of the issues of fact in his favor, and, as in the case of any other finding, it should not be reversed if the evidence reasonably tends to support it. In *Duluth Chamber of Commerce* v. *Knowlton, supra,* which was tried by a jury, and fully submitted by both parties, and upon the evidence thus submitted the plaintiff entitled to a verdict as a matter of law, we held that to "order judgment" was not a prejudicial irregularity, because in its effect equivalent to directing a verdict. But the order in the present case cannot be upheld or given effect on any such ground. The action was tried by the court, where findings of fact, separately stated, are required. The case had not been finally submitted by both parties; and, what is still more important, the evidence was such that it would have been sufficient to support a decision in favor of the plaintiff upon the issues of fact. Therefore we cannot see how it can be supported as a finding of facts in favor of defendant. To give it any such effect would be to give him an undue advantage from his own irregular and unauthorized practice. Neither the counsel in making the motion, nor the court in making the order, contemplated or had in mind any such thing as findings of fact. The order contains nothing that will enable it to perform the office of such

findings. It neither discloses the views of the court upon any particular fact, nor his conclusions upon any particular question of law. It does not show what facts he thought the evidence established, or whether he decided the motion upon the statute of frauds or upon the insolvent law; or, if upon the latter, what construction he placed upon the act. In short, it furnishes no sort of a basis for the review on appeal of the decision of the trial judge, either upon the facts or the law. If it appeared from the evidence that the plaintiff had entirely failed to make out a cause of action, so that, as a matter of law, the defendant was entitled to a dismissal of the action, perhaps the order might be sustained as equivalent to one of dismissal; but the state of the evidence, as already suggested, was such as to entitle the plaintiff to findings of fact upon it. The order must therefore be reversed.

There are other questions which should be briefly considered, with reference to another trial.

First, upon the evidence, there was not proved the actual and continued change of possession necessary, under the statute of frauds, to exclude the presumption of fraud as to creditors. Possession cannot be taken by words and inspection, and the property then left in the hands of the vendor as agent for the vendee. While it is undoubtedly true that what will constitute a sufficient change of possession to answer the statute will depend somewhat on the character of the property, yet the delivery must be actual, and such as the nature of the property, and the circumstances of the sale, admit, and such as the vendor is capable of making. A mere symbolical or constructive delivery and change of possession is not enough, when an actual one is reasonably practicable. Wait, Fraud. Conv. §§ 253–259; *Murch* v. *Swensen*, 40 Minn. 421, (42 N. W. Rep. 290.) Whether plaintiff had satisfactorily rebutted the presumption of fraud was, upon the evidence, a question of fact for the court.

Neither was there such a delivery or change of possession as to take the transaction out of the operation of the second clause of the fourth section of the insolvent law of 1881, (Laws 1881, *c.* 148,) if otherwise within its provisions. While this clause uses language ("delivery or change of possession") different from that used in the

statute of frauds, ("actual and continued change of possession,") yet, in view of the common purpose of the two statutes, we think the language of both must be construed as meaning the same thing. The word "delivery" is here used, not in the sense of a constructive or symbolical delivery, such as would be good between the parties, but an actual delivery, such as effects an actual change of possession; otherwise the object of the statute would be wholly defeated.

Neither can we assent to the claim of the plaintiff that this second clause of section 4 only applies to cases where the instrument containing the grant or conveyance is in writing. If this were so, parties could evade or defeat the statute, in every instance where the contract was not required to be in writing under the statute of frauds, by making an oral contract. What the statute means is that the vendee must either take actual possession of the property, or, as a substitute for this, have a written instrument, evidencing the sale, filed.

But, under the view we take of section 4, the second clause has no application to the case, but it falls under the first clause, if either. When the construction of this section was before us in the case of *Weston* v. *Sumner*, 31 Minn. 456, (18 N. W. Rep. 149,) we were much embarrassed by the words "such sixty days" in the last clause, which did not correspond with anything that preceded. These words were, by Laws 1881, Ex. Sess., c. 23, stricken out, and the words "four months" inserted in their place, thus bringing the two clauses of the section into harmony with each other. Without stopping to consider whether, in *Weston* v. *Sumner*, we placed the proper or the best possible construction upon the second clause of this section as it stood in the original statute, we are satisfied that as now amended it will not admit of the construction adopted in that case. It is very clear that this clause only applies to conveyances or transfers made four months before the assignment under the insolvent law. To hold that it was intended to avoid conveyances to creditors who had no reasonable cause to believe that the debtor was insolvent would therefore lead to the very unreasonable result that one who received his conveyance more than four months before the assignment, if he omitted to take possession or file the instrument of conveyance,

would have to surrender the property, while another, who took his conveyance within the four months, would retain the benefit of it, although guilty of the same omissions. In other words, the longer the time that elapsed between the conveyance to the creditor and the making of the assignment, the worse the creditor receiving the conveyance would be off. No reason exists for a distinction on any such ground. On the contrary, usually, the nearer in time the transfer by a debtor to a creditor is to the insolvency of the former, the greater the suspicion with which it is viewed.

We are clear that to avoid a conveyance under either clause two things must concur: *First,* it must have been made by an insolvent debtor, in contemplation of insolvency, with a view of giving a preference to a creditor upon a pre-existing debt; *second,* the creditor receiving the same must have had reasonable cause to believe that the debtor was insolvent.

The first clause applies only to conveyances made within four months of the assignment, but applies to all preferential conveyances made within that time, without regard to whether or not the creditor has taken possession of the property, or filed the instrument of conveyance. But, with this clause standing alone, the law could easily be evaded, as was sometimes attempted under the late federal bankrupt act, by the creditor, who takes a conveyance knowing that the debtor is insolvent, purposely omitting, until the four months had elapsed, from either taking possession of the property or filing his conveyance, which might alarm other creditors, and thus precipitate the insolvency of the debtor; and, if insolvency proceedings could be postponed the requisite length of time, the preferential conveyance would be out of danger.

Hence the second clause provides that all "such conveyances," although made more than four months before the assignment, unaccompanied with a delivery or change of possession of the property, shall be void unless the instrument containing the grant or conveyance shall have been filed, etc., before the commencement of the four months preceding the assignment.

The expression "such conveyances" refers back to those described in the first clause, to wit, those (1) made by an insolvent debtor in

contemplation of insolvency, with a view of giving a preference (2) to a creditor having reasonable cause to believe that the debtor is insolvent.    Both of these must concur.

Order reversed.