(December 5, 1891.)

## PIERCE v. LANGDON.
### [28 Pac. 401.]

LEASE AT RENTAL OF ONE-THIRD OF CROP—CHATTEL MORTGAGE UPON SAME CROP—FORECLOSURE—CLAIM AND DELIVERY.—On the first day of October, 1889, D. leased of G. certain lands for the term of three years, at a rental of one-third of the crop to be raised on said lands during the term. D. entered under the lease and on January 28, 1890, executed to S. a chattel mortgage upon "the crop of wheat that may be sown and grown for the year 1890 upon said lands." The chattel mortgage was duly recorded on January 29, 1890. On March 1, 1890, D. assigned, or sublet

to P. the land aforesaid for the term from March 1, 1890, to December, 1890. In an action by P. to recover from defendant, who as sheriff had seized and sold five hundred and ninety sacks of wheat of the said crop of 1890, under a foreclosure of said chattel mortgage, *held* that, under the statutes of Idaho said chattel mortgage, was a valid lien upon said crop, and any rights acquired thereto from D. subsequent to the recording of said chattel mortgage were subject thereto.

CLAIM AND DELIVERY—OWNERSHIP OF PROPERTY.—Where in an action of claim and delivery the evidence shows that the ownership of the property was the only issue, an allegation in the complaint that the plaintiff was the owner of, and entitled to, "the property at the time of the commencement of the suit," is sufficient after verdict.

SAME—DESCRIPTION OF PROPERTY IN COMPLAINT.—In an action of claim and delivery, the description of the property sought to be recovered simply as "five hundred and ninety sacks of wheat," *held*, to be insufficient, and a verdict and judgment which refer only to "the property described in the complaint," giving value, are fatally defective.

(Syllabus by the court.)

APPEAL from District Court, Latah County.

Forney & Tillinghast, for Appellant.

An allegation of ownership on the day after the property was taken is not sufficient. (*Manufacturing Co. v. Teetzlaff*, 53 Wis. 211, 10 N. W. 155.) The complaint is defective, in that it does not allege that the plaintiff was entitled to the possession or in possession of the property at any time. (*Wade v. Mason*, 12 Gray, 335, 74 Am. Dec. 597; *Gaynor v. Blewitt*, 69 Wis. 582, 34 N. W. 726; *Britt v. Aylett*, 11 Ark. 475, 52 Am. Dec. 283; *Alden v. Carver*, 13 Iowa, 253, 81 Am. Dec. 430; *Berthold v. Fox*, 13 Minn. 501, 97 Am. Dec. 243.) Chattel mortgages on crops to be sown and grown are valid. (*Argues v. Wasson*, 51 Cal. 620, 21 Am. Rep. 718; *Miller v. Harvesting Mach. Co.*, 35 Minn. 399, 29 N. W. 52; *Wheeler v. Becker*, 68 Iowa, 723, 28 N. W. 40; *Oil Co. v. Maginnis*, 32 Minn. 193, 20 N. W. 85; *Senter v. Mitchell*, 16 Fed. 206.)

Freund & Loughary, for Respondent.

To maintain replevin the plaintiff must be entitled to the possession of the property at the time the action is commenced. (1 Chitty on Pleading, 164; Cobbey on Replevin, 283; *Wheeler v. Train,* 3 Pick. 257; *Manufacturing Co. v. Teetzlaff,* 53 Wis. 211, 10 N. W. 155.) Possession of personal property is *prima facie* proof of ownership, and is presumptive evidence that the possession is rightful. (Cobbey on Replevin, sec. 1017.) Uncertainty in the description is waived by pleading over. (Cobbey on Replevin, sec. 553.) "The jury find for the plaintiff, and against the defendant," is sufficient in substance. (Hilliard on Remedies for Torts, p. 96.) The refusal to give an abstract instruction is not error. (*Treat v. Lord,* 42 Me. 552, 66 Am. Dec. 298.)

HUSTON, J.—This is an action of claim and delivery, brought by the plaintiff against the defendant for the possession of five hundred and ninety sacks of wheat. The facts as they appear in the record are as follows: On the first day of October, 1889, one James F. Davidson leased of C. A. H. Glogaw a certain ranch situated in Latah county, Idaho, for the term of three years from the first day of November, 1889, at a rental of one-third of the crop or yield therefrom. That on the twenty-eighth day of January, 1890, said James F. Davidson, to secure payment of the sum of $513, evidenced by three promissory notes made by said Davidson, executed and delivered to M. J. Shields & Co. a chattel mortgage upon "the crop of wheat that may be sown and grown for the year 1890 upon that certain piece or parcel of land lying and being in the county of Latah, territory of Idaho," etc., describing the same land described in and covered by the lease from Glogaw to Davidson, which chattel mortgage was duly acknowledged and recorded in the recorder's office of said Latah county on the fourth day of February, 1890. Default having been made in the conditions of said chattel mortgage, the mortgagee proceeded to foreclose the same, by delivering to the defendant herein—at that time sheriff of Latah county—an affidavit and notice as required by statute, and directing him to take into his possession the property described in said chattel mortgage, and sell the same in the manner prescribed by law. The defend-

ant, by virtue of said notice and affidavit, took the property described in the mortgage into his possession, advertised and sold the same. On the twenty-third day of October, 1890, the plaintiff instituted his action of claim and delivery by filing a complaint and issuance of summons, to which complaint defendant filed a general demurrer, which demurrer was overruled by the court, and the action of the court therein is assigned as error. The case was tried to a jury, and a verdict was rendered in favor of plaintiff. Defendant moved for new trial, which motion was overruled by the district judge, and judgment was entered in favor of the plaintiff and against the defendant, from which judgment and order defendant appeals.

The appellant specifies twenty-four errors in his assignment. We shall consider and pass upon such only as we deem material to the settlement of the law of the case. The plaintiff predicates his right to recover in this case upon a certain writing executed by James F. Davidson to plaintiff on the first day of March, 1890, and which appears in the record, as follows:

"March the first, eighteen hundred and ninety.

"This is to certify that James F. Davidson has subleased the Glogaw ranch to Joseph H. Pierce, and he agrees to fulfill the agreement stated on the other side, with Glogaw, for the year 1890 to December, 1890.

"[Signed]      JAMES F. DAVIDSON.

"In witness:   J. H. HENLEY.
"Witness:   G. W. KIRK."

This writing, it appears, was indorsed on the lease from Glogaw to Davidson, and purports to have been executed on March 1, 1890. Plaintiff testifies: "I bargained for the place at the mill on the second day of October, 1889. I made a contract to take the land off his [Davidson's] hands just as he had taken it from Glogaw—a verbal agreement between him and Glogaw. I moved on the place the third day of October, 1889." G. W. Kirk, a witness called by plaintiff, and who was the attesting witness to the execution of the sublease from Davidson to plaintiff, and who was a brother in law of the plaintiff, testi-

fies that the sublease was executed in June, 1890. It is true that the plaintiff attempts to impair the weight of this witness' testimony subsequently by showing his ignorance; but, having selected him as the attesting witness to the instrument, and placed him on the stand as a witness, we think that the plaintiff is estopped from disputing or impeaching his testimony. Mrs. J. F. Davidson, wife of James F. Davidson, the original lessee from Glogaw, testifies, referring to the lease and the sublease: "I have seen this paper before. I thought some of it was not here. It seems to me that there was more. I saw it on the Glogaw ranch, when we lived on the Glogaw ranch. Mr. Davidson had it, and he gave it to me. I had it up to June 28, 1890. Mr. Pierce came over there, and Mr. Davidson and he called for it, and of course I had to give it up to them. I gave it up to them. Mr. Pierce made some alteration in it, and he had me sign Mr. Davidson's name to it. It is my handwriting. I did it at Mr. Davidson's and Mr. Pierce's request. They were both at my house. . . . . Mr. Pierce came to our house. Mr. Davidson was out in the barn, and he [Pierce] went out there, and they came to the house together, and called for the lease, and then they called for pen and ink, and done the writing, except signing Mr. Davidson's name. Then they had me sign Mr. Davidson's name on the lease [evidently the sublease]. They said to me, this: 'If I did not sign it they would settle my coffin for me.' They said that they had done it to defraud Mr. Shields—to beat Mr. Shields; that was their intention. I hesitated. I told them I did not think it was right. I told them I thought it was a bad piece of business." It is impossible, it seems to us, to resist the force of this testimony. Pierce swears that he made the contract, as he calls it, on the second day of October, 1889, and went into possession on the 4th of that month. On the 28th of January, 1890, the mortgage is given by Davidson to Shields; and Shields testifies that he furnished Davidson with wheat to seed said ranch, and during all the time from October 1, 1889, to June 28, 1890, the lease had remained in the possession of Davidson. Nothing is said about the subletting until the 28th of June, 1890. The conclusion, it seems to us, is inevitable, the whole matter of the subletting or subleasing was an after-thought, and was done, as

testified by Mrs. Davidson, "to beat Mr. Shields." Whatever interest plaintiff took in the crop he took with full notice of the rights of Shields under the chattel mortgage, and any rights he acquired thereto or therein were subject to the chattel mortgage. The plaintiff, introducing the sublease, himself establishes the time when it was made, to wit, March 1, 1890—long subsequent to the execution of the chattel mortgage—by his own testimony; and the testimony of Mrs. Davidson and George Kirk fix it at a still later period, to wit, the 28th of June, 1890. The plaintiff testifies: "I made a contract to take the land off his hands just as he had taken it from Glogaw"; but the lease from Glogaw to Davidson was for the term of three years, while the sublease from Davidson to plaintiff was for a term from March 1, 1890, to December, 1890.

The first error urged by appellant is raised by the demurrer to the complaint, and is to the effect that it does not appear from the complaint that the plaintiff was in possession of or entitled to the possession of the property in dispute on the twentieth day of October, 1890—the date of the alleged unlawful taking. We think this objection is too technical. The complaint alleges that on the twenty-first day of October, 1890, the plaintiff "was the owner of and entitled to" the property in question; that on the twentieth day of October, 1890, the defendant wrongfully took the same; that on the twenty-third day of October, 1890, and "before the commencement of this action, said plaintiff demanded of defendant the possession thereof." We think this sufficient as it manifestly appears by the allegation of the complaint that before the commencement of the suit the property in dispute was in possession of the plaintiff; that defendant wrongfully took it from his possession; and that he demanded its restoration. We think this disposes of the second allegation of error.

In the case of *Gaynor v. Blewitt,* 69 Wis. 582, 34 N. W. 726, the nonsuit was granted "because of the failure of the plaintiff to show himself entitled to the possession." It is true that the right of possession does not always follow as a necessary incident of ownership, as seems to have been the case of *Gaynor v. Blewitt, supra;* but in this case, as shown by the evidence, the right of possession was a necessary incident of ownership. The

ownership of the property in question was really the only issue tried, and this, an examination of the authorities, we think, will show is the true criterion. (*Gaynor v. Blewitt,* 69 Wis. 582, 34 N. W. 726; *Britt v. Aylett,* 11 Ark. 475, 52 Am. Dec. 283; *Alden v. Carver,* 13 Iowa, 253, 81 Am. Dec. 430; *Berthold v. Fox,* 13 Minn. 501, 97 Am. Dec. 243.)

The third assignment of error urged by the appellant is the insufficiency of the description of the property in the complaint. The only description of the property in the complaint is "five hundred and ninety sacks of wheat." A description of the property is sufficient if it will enable a third person, aided by inquiries suggested by the instrument, to identify the property. We do not think the description in this case comes within this rule. The description "five hundred and ninety sacks of wheat" is too slight in any case, under almost any circumstances; but in a country where whole acres, at the season of the year when this suit was instituted, are covered with sacks of wheat of uniform dimensions and appearance, it conveys virtually no information, and suggests nothing upon which an inquiry could be predicated. In the action of replevin, or claim and delivery, under the code, it is the identical property which is sought to be recovered, and the fact that a party may have a judgment for the value in case the property cannot be returned, does not avoid or render less necessary a sufficient description of the property in the complaint. (*Welch v. Smith,* 45 Cal. 231; Wells on Replevin, secs. 169-173; *Lockhart v. Little* (S. C.), 9 S. E. 511; *Stevens v. Osman,* 1 Mich. 92, 48 Am. Dec. 696.)

The next error urged by the appellant is the refusal of the court to give the following instructions to the jury: "A mortgage on personal property, not owned, but to be subsequently acquired, by the mortgagor, is good against him and all claiming under him." While we believe this instruction correctly states the law, we think the court gave it in substance in his charge.

The objection to the verdict is well taken. Had the description in the complaint been sufficient, the verdict might stand, but, as the verdict refers to "the personal property described in the complaint," and the description in the complaint is fatally defective, the verdict is not aided thereby. The same objection obtains as to the judgment.

The chattel mortgage of Davidson to Shields & Co. was a valid lien upon the crop at the time of the execution of sublease by Davidson to plaintiff, and any rights acquired by the latter under the sublease were subject to the lien of the chattel mortgage, of which plaintiff had notice. (*Mitchell v. Winslow,* 2 Story, 644, Fed. Cas. No. 9673; *Grand Forks Nat. Bank v. Minneapolis etc. Elevator Co.,* 6 Dak. 357, 43 N. W. 808; *Ludlum v. Rothschild,* 41 Minn. 218, 43 N. W. 139.)

The instructions given to the jury by the court we think give substantially the law of the case, but the jury seems to have paid as little regard to them as to the evidence. The judgment of the district court is reversed; the case is remanded to the district court, with directions to enter judgment for the defendant, with costs of both courts.

Sullivan, C. J., and Morgan, J., concurring.