(December 5, 1891.)

SHIELDS ET AL. *v.* RUDDY ET AL.

[28 Pac. 405.]

LEASE—CHATTEL MORTGAGE—RELEASE—RECORD OF MORTGAGE NOTICE.
  On October 1, 1889, R. leased by written indenture of D. certain lands situated in Latah county, Idaho, for the year 1890, at a rental of one-third of the crop grown. Term to commence October 1, 1889. The lease contained a provision reserving to lessor "the right to seed said ground, provided the said second party [lessee] fail to do the same in good season." No provision of forfeiture or right of re-entry in lease. D. entered under lease and continued in possession, working and operating ranch to end of term. On the 28th of January, 1890, D. executed a chattel mortgage on said crop to S., which mortgage was duly recorded. On the 24th of March, 1890, D. executed to R. [lessor] a release of the lease. There was no change in the possession, management or operating of farm after the execution of release. Crop was divided as provided for in lease. *Held,* that the record of the chattel mortgage was notice to all acquiring an interest from D. in the crop subsequent to record thereof that R. took release subject to rights of S. under mortgage (following *Pierce v. Langdon,* decided at present term).

RELEASE A FRAUD.—Under the evidence in this case, *held* that the .
release from D. to R. was made and intended as a fraud upon
S. the holder of the chattel mortgage.

CONSPIRACY TO DEFRAUD—COMPETENCY OF WIFE TO TESTIFY—COURT
TO INSTRUCT JURY.—In an action for conspiracy to defraud,
against two defendants, under a statute which declares "a hus-
band cannot be examined for or against his wife without her con-
sent, nor the wife for or against her husband without his con-
sent," *held,* that the wife of one of the defendants might be exam-
ined as a witness on the part of the plaintiff, under instructions by
the court to the jury, if asked; that her testimony was only to be
considered as against the other defendant than her husband.

(Syllabus by the court.)

APPEAL from District Court, Latah County.

Forney & Tillinghast, for Appellants.

After proof of the combination of the parties, the acts or
declarations of one are evidence against the other. (*Stovall v.
Bank,* 8 Smedes & M. 305, 47 Am. Dec. 85; *Trimble v. Turner,*
13 Smedes & M. 348, 53 Am. Dec. 93; *Mamlock v. White,* 20
Cal. 601; *Reitenbach v. Reitenbach,* 1 Rawle, 362, 18 Am. Dec.
640; 1 Greenleaf on Evidence, sec. 111.)   In a suit against two
or more defendants, admissions made by one of them cannot
be excluded on motion of the other; the only remedy being to
request a charge limiting the effect of their evidence. (*Hair-
grove v. Millington,* 8 Kan. 482; *Mousler v. Harding,* 33 Ind.
176, 5 Am. Rep. 195; *Albaugh v. James,* 29 Ind. 398; *Crane v.
Buchanan,* 29 Ind. 570.)   Chattel mortgages on crops to be
sown and grown are valid. (*Arques v. Wasson,* 51 Cal. 620, 21
Am. Rep. 718; *Miller v. Harvesting Mach. Co.,* 35 Minn. 399,
29 N. W. 52; *Wheeler v. Becker,* 68 Iowa. 723, 28 N. W. 40;
*Oil Co. v. Maginnis,* 32 Minn. 193, 20 N. W. 85; *Senter v. Mit-
chall,* 16 Fed. 206.)

J. C. Elder and J. A. C. Freund, for Respondents.

Plaintiff having alleged existence of a lease from one defend-
ant to the other, parol evidence on this point is inadmissible.
(1 Greenleaf on Evidence, secs. 87, 88.)   Although an agreement
may be made to create a lien upon after-acquired property, yet,
if the property specified in the lien, or any interest in it, is never

acquired by the party agreeing to give the lien, then there is nothing to which the lien can attach, and the record of such a mortgage is not notice of any legal encumbrances. (Jones on Chattel Mortgages, sec. 157, note 5; *Long v. Hines,* 40 Kan. 216, 10 Am. St. Rep. 189, 16 Pac. 339.)

HUSTON, J.—This is an action by the plaintiffs to recover $1,000 damages for the unlawful conversion by the defendants of wheat and barley upon which plaintiffs held a chattel mortgage. The complaint alleges the execution and delivery by the defendant· Davidson to the plaintiffs on the twenty-eighth day of January, 1890, of a certain chattel mortgage to secure the payment of certain promissory notes theretofore executed by said Davidson to the plaintiffs, and then owned and held by them. The chattel mortgage then covered the following described property, to wit: "The crop of wheat and barley that may be sown and grown for the year 1890 upon that certain piece or parcel of land lying and being in the said county of Nez Perces, territory of Idaho, and particularly described as follows, to wit: 'The northwest quarter of section 23, township 37 north, of range 5 west, Boise meridian, known as the "Richard Ruddy Ranch." ' All the said property being now in the possession of the said first party, in the county and territory aforesaid, and free from all encumbrances." The mortgage is in the form required by the statute, containing usual provisions as to foreclosure and sale in case of default, and provides for an attorney's fee of $150 and other expenses, in case of foreclosure, and was duly acknowledged, sworn to by mortgagors, and recorded in the proper office of said county of Nez Perces on January 29, 1890. Complaint charges fraud and conspiracy on the part of defendants, with intent and for the purpose of cheating, wronging and defrauding plaintiffs, by means of which conspiracy an arrangement was made between said defendants whereby said crop of wheat and barley was to be harvested, threshed and sold by defendant Ruddy, and the proceeds thereof to be divided between defendants, to the exclusion of plaintiffs, and in abnegation of their rights under their said chattel mortgage. The complaint charges that in pursuance of said conspiracy said defendant

Ruddy had said wheat and barley threshed and sacked, amounting to about one thousand sacks of wheat and about five hundred sacks of barley, and fraudulently sold and conveyed the same to the use of the defendants. Complaint avers the nonconsent, in writing or otherwise, of the plaintiffs to the sale of said wheat or barley, or any portion of either; avers the value to be $1,600, and that demand was made for same prior to commencement of suit. The answer admits partnership of plaintiffs, execution of notes and chattel mortgage, and nonpayment, as charged in complaint; denies all other allegations of complaint except value. Answer avers execution by defendant Ruddy on October 1, 1889, to defendant Davidson, of a lease of the premises aforementioned. Entry by Davidson under said lease, which lease was for the term of one year, and is in the words and figures following, to wit:

"LEASE.—RICHARD RUDDY to J. F. DAVIDSON.

"This indenture, made this first day of October, 1889, between Richard Ruddy, of the town of Genesee, Idaho territory, party of the first part, and J. F. Davidson, of Genesee, Idaho territory, party of the second part, witnesseth that the said party of the first part, for and in consideration of the covenants hereinafter mentioned and reserved on the part of the second party, has let, and by these presents doth grant, remise and let, unto the said second party, his executors, administrators and assigns, all that parcel of land situated in the county of Nez Perces and territory of Idaho described as follows, viz.: 'The northwest quarter of section 23, township 37 north, range 5 west, Boise meridian, containing one hundred and sixty acres, more or less': To have and hold the said premises, with appurtenances thereto belonging, unto the said second party, his executors, administrators, and assigns, for the term of one year from the first day of October, 1889, to the first day of October, 1890, at a yearly rental of one-third of all grain raised upon said premises, delivered in sacks at threshing-machine; said grain to be well sacked, said first party furnishing sacks for his one-third of the grain. And said second party by these presents covenants and agrees to plow one hundred and sixty acres, or the entire tract heretofore described, and put the same in a good condition

to receive the seed; the same to be sown in wheat, oats or barley, the amount of which to be governed by the condition of land to receive grain at time of seeding. Said first party, however, reserves the right to seed said ground, provided the said second party fail to do the same in good season. Said second party is to put out squirrel poison in the spring, and use his best efforts to exterminate the pests on said premises. Said first party reserves the right to use the fields for pasture for his stock after the grain is harvested, and also the right to feed the straw upon the ground. The said second party is to stack the straw in a workman-like manner, and hold same subject to the order of said first party. Said second party is to keep all buildings and fences in good repair; and it is hereby understood and agreed that at the expiration of this lease the said second party shall give peaceable possession of said premises in as good condition as they were at the beginning of said lease, the usual wear and tear excepted; and it is also understood further, that at the expiration of this lease the said second party shall have the refusal of said premises for a period of one, two or three years, as he may elect. In witness whereof we have hereunto set our hands and seals.

his

"J. F.   X   DAVIDSON. [Seal]

mark.

"R. RUDDY.   [Seal]

"Signed, sealed and delivered in the presence of
                              "R. RICKERING.

"Recorded at request of C. D. Fleming, November 1, 1889, at 4 o'clock P. M.          R. P. MUDGE,
                              "County Recorder."

That on the twenty-fourth day of March, A. D., 1890, the defendant Davidson, for the expressed consideration of one dollar, released or surrendered the said lease to the lessor named therein, the defendant Ruddy, by an instrument in writing executed by defendants Ruddy and Davidson, and duly acknowledged and recorded, which is as follows:

"RELEASE.

"This agreement, made and entered into this twenty-fourth day of March, A. D., 1890, by and between Dick Ruddy of the first part, and J. F. Davidson of the second part, witnesseth that for and in consideration of the sum of one dollar to the first party paid by said second party, the receipt whereof is hereby acknowledged, the party of the second part does hereby quit and deliver up possession unto the said first party the ranch heretofore leased and took possession of, to wit, northwest quarter of section 23, township 37 north, of range 5; and the lease heretofore entered into and duly recorded in the office of the county recorder of Nez Perces county, Idaho, shall from the filing of these presents be held for naught and no longer of force and effect, and shall be considered as having terminated, and the said Dick Ruddy is hereby given full possession and control of the above-described premises.

"R. RUDDY.

his

"J. F.     X     DAVIDSON.

mark.

"In presence of
        "E. R. WISWELL.
        "C. F. BURR."

"Office of Recorder of Deeds,⎫
Territory of Idaho,              ⎬ ss.
County of Latah.        .      ⎭

"I, C. F. Burr, a notary public in and for said county, in the territory aforesaid, do hereby certify that J. F. Davidson, personally known to me as the real person whose name is subscribed to the foregoing deed, appeared before me this day in person, and acknowledged that he executed and delivered the said deed as his free and voluntary act for the uses and purposes therein set forth.   Given under my hand and official seal this twenty-fourth day of March, in the year of our Lord one thousand eight hundred and ninety.

"[Seal]                         C. F. BURR,
                                "Notary Public.

"[Indorsed:]   R. Ruddy.   Release of Lease."

"Territory of Idaho, ⎱ ss.
County of Nez Percés. ⎰

"I hereby certify that the within instrument was filed in this office for record on the twenty-fifth day of March, 1890, at 3 o'clock P. M., at the request of C. F. Burr, and was duly recorded in Book 54 of Release of Mortgages, on page 190.

"R. P. MUDGE,
"Recorder of Deeds."

Defendant Ruddy avers that, Davidson not being able to procure seed to sow the ground, as provided in the lease, he (Ruddy), on the twenty-fourth day of March, 1890, took from Davidson a release, and entered into possession of said premises, sowed and harvested the crop for the year 1890. We have already held in the case of *Pierce v. Langdon,* ante, p. 141, 28 Pac. 401 (decided at present term), that a chattel mortgage upon crops to be sown was valid, and, when duly recorded, was notice to all persons acquiring or claiming to have acquired rights in or to the mortgaged property, through or under the mortgagor, subsequent to the recording of the mortgage, and this case is already within the rule there enunciated. There was much said on the argument about forfeiture by the lessee. There is no clause or condition of forfeiture in the lease. The provision that, in the event the lessee should fail to sow the crop in due season, the lessor might proceed to do so, cannot be construed to mean or involve a forfeiture of the term. It was simply a protection to the lessor, and, in the event of his availing himself of it, he became the creditor of the lessee to that extent. It gave him no right to declare a forfeiture of the term, or even to re-enter, except for the specified purpose. We are satisfied, from the evidence, that the arrangement between the defendants on the 24th of March, 1890, was fraudulent. There was no consideration for it. There was no change of possession or of the management or conduct of the farm thereafter or during the term. Davidson went into possession of the ranch in October, 1889, moved there with his family, and continued to live there, manage and operate the ranch to the end of the term expressed in the lease, or at least until the crop was harvested and threshed. It is true, defendant

Ruddy states: "After the signing of the instrument I went over and took possession of the ranch. I stayed there perhaps a half day. I did not pay him off. There was no difference to be seen there between two hours after and two hours before. I did not change anything"—but even this oracular statement of a conclusion cannot be accepted as proof of a fact. Ruddy took no part personally in the sowing, harvesting, or threshing of the crop. He seems to have been a sort of an "absentee" after March 24, 1890. It is quite clear, from the evidence, that Davidson retained and received his interest in the crop as under the lease.

Samuel Nueph testifies: "He [Davidson] told me he got the two-thirds [of the crop] after Ruddy got the seed wheat. I had spoken to him, and asked him when I was going to get my pay. He said: 'Never mind that; I get my two-thirds all the same.'" Like expressions and statements on the part of Davidson are testified to by several witnesses; and after the threshing it seems the crop, or at least a portion of it, was divided into three piles, one of which was allotted to Davidson, one to Pierce (who, it appears, was in some way interested with Davidson), and one to Ruddy.

The first four assignments of error urged by the appellant are to the ruling of the court in rejecting certain testimony offered by plaintiffs of statements made by defendant Davidson as to what share or interest he had in the crop in question. The court held that no statements of Davidson in regard to his (Davidson's) share or interest in the crop were admissible unless shown to have been made in the presence of Ruddy. This, we think, was error. The complaint charges a conspiracy between the defendants to defraud the plaintiffs, and introduced evidence sufficient to make a *prima facie* case; and they were thereafter entitled to prove the several or individual acts or statements of any one of the conspirators made or done in furtherance of the object of the conspiracy. This, we think, covers the objections of appellant to the instructions of the court to the jury upon the same subject. (*Stovall v. Bank,* 8 Smedes & M. 305, 47 Am. Dec. 85; *Trimble v. Turner,* 13 Smedes & M. 348, 53 Am. Dec. 93; *Mamlock v. White,* 20 Cal. 601; *Reitenbach v. Reitenbach,* 1 Rawle, 362, 18 Am. Dec.

640; *Riehl v. Association,* 104 Ind. 70, 3 N. E. 633.)   A much wider latitude of inquiry is permissible in cases involving a charge of fraud than in those where no such element exists or is alleged.   (*Murch v. Swenson,* 40 Minn. 421, 42 N. W. 290; *Walter v. Garnant,* 13 Pa. St. 515, 53 Am. Dec. 491; *Stewart v. Severance,* 43 Mo. 322, 97 Am. Dec. 392; Bump on Fraudulent Conveyances, 3d ed., 588, 589.)   The ninth assignment of error is that the court allowed E. R. Wiswell, a witness for defendants, to testify as to a conversation between the two defendants, Ruddy and Davidson.   This was palpable error; so palpable, in fact, as not to require authorities to establish it.   The next error assigned is the refusal of the court to permit Mrs. M. C. Davidson, wife of one of the defendants, to testify on behalf·of plaintiffs.   Section 5958 of the Revised Statutes of Idaho declares: "A husband cannot be examined for or against his wife without her consent, nor a wife for or against her husband without his consent."   In Indiana, under a statute which excluded husband and wife as witnesses "for or against each other," it was held, in an action against husband and wife for slanderous words spoken by the wife, she is a competent witness in her own behalf, and he is a competent witness in his own behalf.   (*Mousler v. Harding,* 33 Ind. 176.)   "But it would be the duty of the court, by instructions, if asked, to limit the effect of the testimony to the party testifying."   We see no reason why that rule should not apply in a case like this, where a separate judgment might be entered against either of the defendants.   (Rev. Stats., sec. 4351; Cooley on Torts, 2d ed., 145, and note.)   Inasmuch as a separate judgment might have been rendered in the case against the defendant Ruddy, the witness, Mrs. M. C. Davidson, should have been permitted to testify, under instructions from the court, to the jury that her testimony should only apply to defendant Ruddy.   Judgment and order of district court refusing new trial reversed, and cause remanded; costs to appellant.

Sullivan, C. J., and Morgan, J., concurring.