ISBELL, RESPONDENT, *v.* SLETTE ET AL., APPELLANTS.

(No. 3,613.)

(Submitted February 16, 1916. Decided March 13, 1916.)

[155 Pac. 503.]

*Chattel Mortgages—Annual Crops—Filing—Constructive Notice —To Whom.*

Chattel Mortgages—What may be Mortgaged.
   1.  While, independently of statute, one cannot sell or mortgage personal property not in existence or in which he has no present interest, property which has a potential existence may be mortgaged or hypothecated.

Same—Annual Crops—Extent of Lien.
   2.  Annual crops have a potential existence even before they are planted, and the owner, or one rightfully in possession, of land has a mortgagable interest in the crops thereafter to be planted thereon, the

lien of such mortgage not attaching until they are planted, and being limited to the interest which the mortgagor has.

Same—Annual Crops—Nature of Transaction.

3. A mortgage of the character of the above, *held* to be, in effect, no more than an executory contract which may become executed when the crops are planted and the lien attaches, or defeated if for any reason the mortgagor violates faith and fails or refuses to plant the crops.

Same—Filing—Constructive Notice to Whom.

4. The purpose of filing a chattel mortgage being to protect *bona fide* creditors and subsequent purchasers and encumbrancers (Rev. Codes, sec. 5758), constructive notice is imparted by the act of filing to such only; hence a lessee who, without actual notice of a mortgage given by the owner of land upon future crops, took possession of it before seeding time, and thereafter planted and harvested the crops,—being neither creditor, purchaser nor encumbrancer,—was not chargeable with constructive notice of the existence of the mortgage.

[As to chattel mortgages and what they affect, see note in 137 **Am. St. Rep.** 472.]

*Appeal from District Court, Valley County; Frank N. Utter, Judge.*

ACTION by T. L. Isbell against K. O. Slette and J. J. Higgins, Judgment for plaintiffs; defendants appeal from it and an order denying them a new trial.   Affirmed.

*Messrs. Norris, Hurd & McKellar,* for Appellants, submitted a brief; *Mr. Edwin L. Norris* argued the cause orally.

That a valid chattel mortgage may be executed upon crops to be thereafter planted and grown seems to be supported by the decided weight of authority, under the provisions of statutes similar to the chattel mortgage statute of Montana.   The rule is stated in the case of *Wilkerson* v. *Thorp,* 128 Cal. 221, 60 Pac. 681, as follows: "It has been long settled, and has now become an established rule of property in this state, that a valid mortgage may be made upon a crop to be raised after the execution of the mortgage.   (*Arques* v. *Wasson,* 51 Cal. 620, 21 Am. Rep.; 718; *Lemon* v. *Wolff,* 121 Cal. 274, 53 Pac. 801; *Hall* v. *Glass,* 123 Cal. 500, 69 Am. St. Rep. 77, 56 Pac. 336.)"   The rule established by the court in the case above cited from was first mentioned in the case of *Arques* v. *Wasson, supra,* and seems to have been followed in all of the California cases passing upon the same question since that time.   The rule is stated in

Cobbey on Chattel Mortgages, section 384, as follows: "A mortgage of an unplanted crop or of other future produce of a farm made by one in lawful, undisputed possession of the land on which they were to be planted, whether as owner or lessee, is now generally regarded as good and valid at law, as well as in equity." The same rule is stated in 6 Cyc. 1046 and cases there cited as obtaining in most jurisdictions.

The lien of a chattel mortgage upon a crop to be thereafter grown is superior to the rights acquired by the lessee of land upon which the crop is grown, acquired after the execution and filing of the mortgage and prior to the planting of the crop. (*Mayer* v. *Taylor,* 69 Ala. 403, 44 Am. Rep. 522; *Pierce* v. *Langdon,* 3 Idaho, 141, 28 Pac. 401.)

*Mr. John L. Slattery* and *Mr. John M. Kline,* for Respondent, submitted a brief.

A mortgage only creates a lien. (*Demers* v. *Graham,* 36 Mont. 402, 122 Am. St. Rep. 384, 13 Ann. Cas. 97, 14 L. R. A. (n. s.) 431, 93 Pac. 268.) Until the property mortgaged comes into being, and the mortgagor acquires an interest therein, the mortgage is only an agreement to create a lien. (*Bidgood* v. *Monarch Elevator Co.,* 9 N. D. 627, 81 Am. St. Rep. 604, 84 N. W. 561; *Butt* v. *Ellett,* 86 U. S. 544, 22 L. Ed. 183.)

Where a man gave a mortgage on crops to be grown, and the crops were grown by the mortgagor and his brother as tenants in common, upon intervention by the brother as claimant for a share of the crops in suit brought by the mortgagees for the crops, the court said: "The mortgage passed to the mortgagees no other or greater interest in the crops than resided in the mortgagor. It was his right and interest, only, he had capacity to convey." (*Keyser* v. *Maas,* 111 Ala. 390, 21 South. 346; see, also, *Woolsey* v. *Jones,* 84 Ala. 88, 4 South. 190; *Simmons* v. *Anderson,* 44 Minn. 487, 47 N. W. 52; *Christianson* v. *Nelson,* 76 Minn. 36, 78 N. W. 875; affirmed on rehearing, 79 N. W. 647; *Hogan* v. *Atlantic Elevator Co.* (1896), 66 Minn. 345, 69 N. W. 1; *Bouton* v. *Haggart,* 6 Dak. 32, 50 N. W. 197;

*Gammon* v. *Buel*, 86 Iowa, 754, 53 N. W. 340; *McMaster* v. *Emerson* (1899), 109 Iowa, 284, 80 N. W. 389.)    The mortgage in *Norfleet* v. *Baker*, 131 N. C. 99, 42 S. E. 544, was of crops gathered by the mortgagor upon certain land.    It was held that the lien of this mortgage could not extend to crops grown by a lessee of the mortgagor.

Not a case have we been able to find, with facts approximating the facts in this action, as authority for appellants' contention.    Many directly support the theory of respondent.    Briefly, that theory is: A mortgage upon a crop is a mortgage upon the crop of the mortgagor, and nothing more.    From it follows that: (1) It is not a mortgage upon land; (2) it is not a mortgage upon a right or privilege; (3) it is not a mortgage upon the crop of anyone save the mortgagor; (4) its filing of record does not affect a lessee or purchaser of the land whose lease or purchase antedates the planting of the crop; (5) the mortgagor may lease, sell or otherwise dispose of the land.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On September 30, 1911, Geo. D. Isbell executed and delivered to the State Bank of Culbertson a chattel mortgage upon the crops to be planted and grown upon his homestead during the season of 1912, as security for a debt due one year thereafter. In November, 1912, the indebtedness not having been paid, the bank, acting through K. O. Slette and J. J. Higgins, its agents, took possession of certain wheat and flax which had been grown upon the Isbell homestead during the season of 1912.    T. L. Isbell, a son of Geo. D. Isbell, made claim that in April, 1912, he leased the homestead from his father; that he furnished the seed, planted, raised and harvested the crops—including the grain in dispute—and that his father had no interest whatever in them. He brought this action in conversion and prevailed in the lower court.

Although defendants appealed from the order denying them a new trial, as well as from the judgment, they do not attack the

good faith of the transaction between Geo. D. and T. L. Isbell, or contend that the evidence does not sustain the plaintiff's version of that transaction. They content themselves with urging a single question, *viz.:* Does a chattel mortgage given by the owner of land upon all the crops thereafter to be seeded and grown upon the land during the ensuing crop season—and which chattel mortgage is duly executed and filed—impart constructive notice to one who leases the land thereafter, but before seeding time, so that the crops grown on the land by such lessee will be subject to the lien of the chattel mortgage? It is the contention of the appellants that the annual farm crops to which the mortgage referred had a potential existence in September, 1911, though not planted until the spring of 1912, and that Geo. D. Isbell, by virtue of his ownership and possession of the homestead at the time he executed the mortgage, had a mortgagable interest in such crops, and that the mortgage, duly executed and filed with the county clerk and recorder, was constructive notice to T. L. Isbell when he took over the land, and that any interest he may have acquired in the crops for 1912 was subject to the lien of the mortgage.

Independently of statute (sec. 5712, Rev. Codes), one cannot [1] sell or mortgage personal property not in existence or in which he has no present interest. (*Bernard* v. *Eaton,* 2 Cush. (Mass.) 303; *Farmers' L. & T. Co.* v. *Long Beach Imp. Co.,* 27 Hun, 89.) But it is quite generally held that property which has a *potential* existence may be mortgaged or hypothecated (*Arques* v. *Wasson,* 51 Cal. 620, 21 Am. Rep. 718; 5 R. C. L. 405; 6 Cyc. 1045), and the same authorities hold that annual [2] crops have a potential existence even before they are planted, and that the owner or one rightfully in possession of land has a mortgagable interest in the crops thereafter to be planted on such land. (*Arques* v. *Wasson,* above; Jones on Chattel Mortgages, 5th ed., sec. 143; Cobbey on Chattel Mortgages, sec. 384; 6 Cyc. 1046.) It goes without saying that the lien of such a mortgage cannot attach until the crops come into existence—until they are planted—and the decided weight of

authority and the better reasoning limit the extent of the lien to the interest which the mortgagor then has. (Jones on Chattel Mortgages, sec. 143a; Cobbey on Chattel Mortgages, sec. 388.)

Speaking of a mortgage on crops thereafter to be planted, the supreme court of Iowa said: "While there was nothing upon which the mortgage could operate at the time of its execution, it did attach to the property when it came into existence." [3] (*Wheeler* v. *Becker*, 68 Iowa, 723, 28 N. W. 40.) In our opinion, such a mortgage is in effect nothing more than an executory contract which may become executed when the crops are planted and the lien attaches, or defeated if for any reason the mortgagor violates faith and fails or refuses to plant the crops.

But appellants contend that this chattel mortgage, by reason [4] of its being filed with the county clerk and recorder, imparted constructive notice to T. L. Isbell, and therefore any interest which he acquired in the crops should be held to be subject to the mortgage lien, and *Pierce* v. *Langdon*, 2 Idaho, 878, 3 Idaho, 141, 28 Pac. 401, is cited in support of this view. We should be somewhat in doubt as to the extent to which the court intended to go, but in *Shields* v. *Ruddy*, 2 Idaho, 884, 3 Idaho, 148, 28 Pac. 405, the court elucidated to this extent: "We have already held in the case of *Pierce* v. *Langdon*, 28 Pac. 401 [decided at present term], that a chattel mortgage upon crops to be sown was valid, and, when duly recorded, was notice to all persons acquiring or claiming to have acquired rights in or to the mortgaged property through or under the mortgagor subsequent to the recording of the mortgage." In each of those cases actual fraud was the determining factor, and the observation above would seem to be merely *dictum*. It may be said in passing, that the statute in force when these cases arose and were decided, required chattel mortgages to be "*recorded* in like manner as grants of real property." (Sec. 3386, Rev. Stats. of Idaho, 1887.) Whether this fact entered into the court's determination does not appear.

Counsel likewise rely upon *Mayer* v. *Taylor,* 69 Ala. 403, 44 Am. Rep. 522, in which the facts were that one Pendergrast, rightfully in possession of land, about February 5, 1880, executed to Taylor & Co., a chattel mortgage upon the crop of cotton to be raised upon the land during that crop season. Pendergrast then entered into a contract with Kelley by which they were to farm the land as copartners. In May, Kelley and Pendergrast executed a chattel mortgage to Mayer & Co., upon the cotton crop to be raised by them that year. In a controversy between the two mortgagees, the court held that Taylor & Co.'s mortgage was prior in time and therefore superior in right, and that their mortgage extended to whatever interest Kelley had in the crop. Kelley was charged by the court with notice of the Taylor mortgage, though the record is barren of any intimation that actual notice was had. Under the laws of Alabama a chattel mortgage was required to be *recorded,* and the court must have held that the recorded instrument imparted constructive knowledge to a lessee of the land upon which the crops were to be grown.

In *Keyser* v. *Maas,* 111 Ala. 390, 21 South. 346, a contrary view appears to have been expressed, though no reference whatever to the earlier decision is made.

Assuming these cases to hold the view most favorable to appellants as contended, we are unable to adopt their conclusion. In this state a chattel mortgage is not recorded but merely filed with the county clerk and recorder. Sections 5757–5773, Revised Codes, in force when these transactions occurred, is one of the numerous statutes aimed at fraudulent conveyances. Section 5758 provided that a chattel mortgage should be void as against creditors of the mortgagor or subsequent purchasers or encumbrancers of the mortgaged property in good faith for value, unless (a) possession of the property was taken and retained by the mortgagee, or (b) the mortgage was made to contain the proper recital, was accompanied by the required affidavit, was duly acknowledged and filed with the proper officer. It will be observed that registration—filing—was made the equiva-

lent of "change of possession" and that the purpose of either of these required acts was to impart knowledge.   (5 R. C. L. 409.) But knowledge to whom?   Sometimes it is said loosely that an instrument duly filed or recorded under our recording laws imparts notice of its existence and contents to all the world; but this is an absurdity, as a moment's reflection upon the origin and history of such statutes will disclose.   (24 Ency. of Law, 2d ed., 75 and 146.)   As between mortgagor and mortgagee, the mortgage is just as valid and binding whether it be filed or whether it conform to any of the requirements of the statute. (*Reynolds* v. *Fitzpatrick*, 23 Mont. 52, 57 Pac. 452.)   The same rule prevails as between the mortgagor or mortgagee and a stranger.   Indeed, the unfiled, informal chattel mortgage is perfectly valid as against everyone except (1) creditors of the mortgagee who seek to enforce their claims against the mortgaged property, or (2) subsequent purchasers or encumbrancers of the property in good faith for value (6 Cyc. 1056–1066), and since the purpose of filing a chattel mortgage is to protect only *bona fide* creditors, and subsequent purchasers or encumbrancers, the filing imparts notice only to such.   (5 R. C. L. 413.)

In *Greer* v. *Newlands,* 70 Kan. 315, 109 Am. St. Rep. 424, 70 L. R. A. 554, 78 Pac. 835, the question at issue was the extent to which constructive notice is imparted by a chattel mortgage duly filed, under a statute like ours.   The person sought to be charged was a factor, without actual notice of the chattel mortgage.   The court said: "It has been enacted however (Gen. Stats. 1901, sec. 4244), that an unrecorded mortgage 'shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith.' The factor is neither a creditor of the mortgagor nor a subsequent purchaser or mortgagee, and therefore is not within the protection of the statute.   As to him the mortgage is equally as effective, whether of record or not.   (*Drumm etc. Co.* v. *First Nat. Bank,* 65 Kan. 746, 70 Pac. 874.)   It follows that he is not affected with notice of the filing of the mortgage, for 'the record imparts constructive notice to such persons only as would have

been entitled to protection against the conveyance in case it had not been recorded.' (24 Am. & Eng. Ency. of Law, 2d ed., 146.)"

A chattel mortgage upon crops thereafter to be planted cannot operate as an encumbrance upon the land where the crops are to be grown, and therefore, in the present instance, Geo. D. Isbell, after the execution of this mortgage and before any crops were planted, might have sold his homestead to a third party, and the purchaser could not have been held bound by the mortgage, and a lessee is in no worse situation. This is the rule followed by the great weight of authority, and commends itself to our judgment. (*Simmons* v. *Anderson,* 44 Minn. 487, 47 N. W. 52; *McMaster* v. *Emerson,* 109 Iowa, 284, 80 N. W. 389; *Reeves & Co.* v. *Sheets,* 16 Okl. 342, 82 Pac. 487; Jones on Chattel Mortgages, 5th ed., sec. 143a.)

T. L. Isbell, as lessee of his father's homestead, did not fall within either of the groups mentioned in our statute. He was not a creditor seeking to enforce his claims against the mortgaged property, and he was not a purchaser or encumbrancer of the property. As against him, the chattel mortgage would have been just as valid if it had not been filed at all, and, by filing it, his situation was not altered in the least. The mortgage, though filed, did not impart constructive notice to him, and, since it is not contended that he had actual notice of its existence, he cannot be bound by it in any sense.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.