JONATHAN W. FREEMAN, Plaintiff in Error, *v.* JAMES W. OGDEN, Defendant in Error.

Upon a certiorari, awarded by the Supreme Court, in accordance with the provisions of the Revised Statutes (2 R. S., 533, § 47), to review summary proceedings to recover the possession of land upon the application of a landlord, in an inferior tribunal, that court is authorized to examine the decision of such inferior tribunal upon its merits, and to reverse the same, if not supported by the evidence.

Where T. went into possession of premises on the 1st of May, 1862, under a lease for a year from that date from O, who claimed to be the owner, and subsequently, in July, 1862, took from F, without the knowledge of O, a lease of the same premises, for the same term (May, 1862, to May, 1863), and paid rent to F, but paid no rent to O; and, on the last day of April, 1863, T surrendered to O, who took possession on that day, and, on the next day, on being applied to by F, stated that he had possession under T's authority, and was entitled to hold until noon of that day.—*Held*, that no relation of landlord and tenant was created between F and O by these facts, and that on O's subsequent refusal to surrender to F, he could not be removed upon summary proceedings, instituted by F.

*Held* further, these facts appearing from the evidence, the Supreme Court correctly reversed the decision of the court below, directing such removal.

*It seems*, that it would make no difference in the relations of F and O, though T had temporarily gone out of possession, previous to July, 1862, and then entered under F's lease, without the knowledge and acquiescence of O. DANIELS, J.

(This cause was argued on the 8th of January, 1869, and decided March 19th, 1869.)

THE plaintiff in error, instituted proceedings in one of the district courts of the city of New York, for the purpose of removing the defendant from the possession of certain premises, occupied by him, on the ground that he held over, after the expiration of his term, without permission of his landlord. The defendant in error, by affidavit, denied that he held or occupied the premises, as the tenant of the plaintiff in error. Upon the trial of the issue thus formed, the District Court decided in favor of the plaintiff in error, and, under a warrant, issued pursuant to that decision, the defendant in error was removed from the premises, and the plaintiff

in error placed in possession of them. The General Term, in the first district, upon writ of certiorari to the District Court, reversed the decision of that court, and awarded restitution of the premises to the defendant in error. And from the judgment recovered upon that decision, the plaintiff in error brought error to this court.

The evidence, in reference to the question, whether the relation of landlord and tenant was shown before the District Court, to have ever existed between the plaintiff and defendant in error, is fully stated in the opinion of Daniels, J.

*Erastus Cooke*, for plaintiff in error.

*G. C. Goddard*, for defendant in error.

DANIELS, J. Two points are made, on the part of the plaintiff in error, on which it is claimed, that the judgment of the Supreme Court should be reversed in this case. First: That the Supreme Court had no legal authority for examining and reversing the decision of the District Court, upon its merits. And, secondly, if it had, the conclusion it arrived at, was erroneous. The first of these objections, is answered by the language of the statute itself, which provides, that the Supreme Court may award a writ of certiorari in these cases, "for the purpose of examining any adjudication," made upon the application of the landlord. (2 R. S., 533, § 47.) Under this provision of the statute, every adjudication made upon the application, and in the course of the proceeding following it, may be properly made the subject of review by the appellate tribunal. Practical effect can be given to the express terms of the statute in no other way. And no other construction of them would be consistent with an enlightened system of jurisprudence. This was, in substance, the conclusion maintained by the Court of Errors, in *Anderson* v. *Prindle* (23 Wend., 616, 618); *Niblo* v. *Post's Adm'rs* (25 Wend., 280), and by this court in *Morewood* v. *Hollister* (2 Seld., 309.) And as so construed, it extends the power of the

court but little beyond that applied to the review of proceedings brought before it under a common law certiorari. (*Mullins* v. *People,* 24 N. Y., 399, 402–4; *Swift* v. *City of Poughkeepsie,* 37 N. Y., 516). Even in those cases, the court may properly reverse, where the evidence, which is required to be contained in the record, is so deficient, as to leave the charge, that formed the subject of the proceeding, substantially unsupported. The first objection urged against the judgment of the General Term, within these authorities and the plain terms of the statute, is, therefore, untenable, and should be overruled.

The second objection can only be disposed of by examining the evidence given upon the trial of the traverse before the District Court. The issue, formed by the affidavits, presented the question, whether the defendant in error was, in any proper sense, the tenant of the plaintiff in error. It was insisted that he was such tenant, by reason of his being the under tenant, or assignee, of Anthony Thornton. The only witness examined upon this subject, before the District Court, on the part of the plaintiff in error, was William Dunning, who proved that Thornton took a lease of him, as the agent of the plaintiff in error, for the occupation of the premises in question, for the period of one year, commencing on the 1st day of May, 1862. This lease bears date the 31st day of July, 1862, and in the affidavit of Dunning, on which the summons to show cause was issued, it is stated to have been executed on that day, and this was not denied by the affidavit of the defendant in error. This witness testified, that Thornton went into possession of the premises under that lease, and paid rent to him, as the agent of the plaintiff in error. Thornton continued in possession until the last day of April, 1863, when he delivered the premises to the defendant in error, and he at once entered into the possession of them. On the next day, the agent, according to his testimony, called upon him, and was then informed by him that he had the possession under Thornton's authority, and was entitled to keep possession under that, until noon of that day. This was substan-

tially the case, as it was made out by the evidence on the part of the plaintiff in error, with the additional circumstance stated by the defendant in error, showing the time and manner in which he procured possession.

For the purpose of establishing the fact, that he did not go into possession at that time, as a tenant, the defendant in error proved, that he first acquired possession of the premises, in April, 1861, under a contract for their purchase, made with him by Philo Beebe & Brother, on the 11th day of June, 1860; and on the 16th day of October, 1861, he leased them to Anthony Thornton, for the term of six months, commencing the first day of the following November. Whether Thornton took possession, under this lease, is not expressly made to appear, but it may fairly be inferred that he did, from the fact of hiring, as nothing inconsistent with it was proved or claimed. On the 29th day of April, 1862, Thornton took another lease from the defendant in error, for the term of one year, commencing on the first day of the following month of May. And he testified that, Thornton was in possession, under that lease, on the 31st day of July, 1862, when the lease was taken, by him, from the plaintiff in error. This fact was not expressly denied or controverted by the agent, and witness, Dunning. He did not testify, that Thornton yielded up or surrendered his possession, on that day, or that anything occurred, from which it could be inferred that he was out of possession, when he accepted the lease from the plaintiff in error. He merely stated, that Thornton went into possession under that lease, by which he undoubtedly intended to be understood, that Thornton received possession from that time, by the acceptance of the lease, on that day. No pretense was made that Thornton was out of possession, up to that time, and it may fairly be inferred, as the premises were rented for a dwelling, and were adapted to that use, that he had been in possession from the first of the preceding November, when the first lease taken by him went into effect. If this view of the facts proved, be correct, there was no conflict in the evidence

given by the witnesses, on this subject. And it must consequently be assumed, that there was neither a surrender, nor an ouster, when Thornton took the lease, which was made on the 31st of July, 1862. If there were not, then it could not have been true, that Thornton went into possession under that lease. This was a matter of fact, to be established by evidence, and, under the circumstances, if it could have been proved at all, it should have been done by the party, who claimed that to be the truth ; not merely by a general statement, that such was the case, but by legal proof of such facts as, in judgment of law, would have been sufficient for that purpose. Even that proof might not have been sufficient to have justified the lessee in attorning to the plaintiff in error, who was a stranger to the tenancy. But, certainly, without it, the acceptance of the lease, from the plaintiff in error, by Thornton, could work no legal change in his relations, as a tenant to the defendant in error. For then it would be nothing less than an attornment to a stranger, which, by the statute of this State, was absolutely void. (1 R. S., 744, § 3.)

But even if Thornton had abandoned possession temporarily, and, during that time, had accepted the lease of the 31st of July, 1862, it could not have produced any substantial difference in the relation of the defendant in error to the premises, after possession was yielded to him, on the last day of April, 1863. For it was not shown, that he had any knowledge or information of either of those circumstances, at the time he received the premises of Thornton. When, therefore, he accepted them, as it was shown he did on that day, he could not have intended to receive them under the lease of the 31st of July. On the contrary, as it was not shown, that he knew anything of that lease, the presumption must be, that he accepted the premises as a surrender of the tenancy, previously created by the lease executed by himself, on the 29th of April, 1862. The defendant in error testified, that he did not know, that Thornton was dispossessed ; and nothing was shown in any way contradicting this statement. As

there was not, and no proof was given in any manner tending to establish the conclusion, that he knew that Thornton had accepted a lease from the plaintiff in error, as to the defendant in error, that lease was entirely inoperative. It had no legal force as to him, and Thornton, by his relations to him, was disabled from giving it such force as would, in any manner, create the legal relation of landlord and tenant between him and the plaintiff in error. If it had been shown that the defendant in error had acquired knowledge of the acceptance of the lease of the 31st of July, 1862, by Thornton, his tenant, and that he had approved and confirmed the act, and then himself accepted possession under it, the case would have been different. But, as to this vital circumstance, no evidence was given before the District Court, which it can, with any propriety, be affirmed, satisfactorily tended to establish it. The reply made to the agent, that he had possession under the tenant Thornton's authority, and was entitled to keep it until twelve o'clock at noon, is not sufficient for that purpose. Because it does not show, and no evidence was given showing, that he understood that Thornton claimed to hold the premises under a lease given to him by the plaintiff in error, or under any title or authority different from that contained in his older lease of the 29th of April, 1862. The omission of Thornton to pay rent to the defendant in error, does not relieve the case of its difficulty in this respect. For no proof was given, showing that the defendant was, at any time, informed, that the omission was in any manner connected with the lease taken by his tenant from the plaintiff in error.

Aside from this interference with the tenant, no evidence was given, that the plaintiff in error had any right, or interest, in the premises in controversy. And as none accrued to him by that act, which now appears to have been that of a simple wrongdoer, it is manifest that the decision of the District Court was erroneous, and it was, therefore, properly reversed by the Supreme Court. The judgment of that court should be affirmed, and the restitution awarded by it carried into execution.

HUNT, Ch. J. (dissenting.) The proceedings were in the usual form, to obtain possession of premises alleged to be held over by the tenant in possession, after the expiration of his lease. The justice rendered judgment in favor of the landlord. The General Term reversed the proceedings.

Freeman claimed to recover possession of the premises, 119 West 44th street, on the ground that he had leased them to one Thornton, who occupied under the lease, that Ogden was in, as successor of Thornton, the lessee; that the term had expired on the 1st of May, 1863, and that Ogden refused to deliver up the possession. All these allegations were denied by Ogden.

To maintain his case, the landlord called as a witness one Dunning, who testified that he was the agent for the landlord, and that he knew all the parties. That he saw Thornton sign the lease for the premises in question (being a lease dated in July, 1862), leasing the premises from May 1, 1862, to May 1, 1863, from the plaintiff, Freeman. He further testified, that Thornton went into possession of the premises under that agreement. He also testified that on the day on which he was testifying, he had been to the premises in question, had met Ogden there, that he asked him by what authority he claimed possession of the premises, that Ogden replied that he had possession under the tenant Thornton's authority, and was entitled to keep such possession until twelve o'clock of that day.

This appears to me to furnish *prima facie* evidence, which would have justified the decision of the magistrate, had no further evidence been given. It was shown, that the plaintiff leased the premises to Thornton, that Thornton took possession by virtue of that lease, that the defendant Ogden stated that Thornton was such tenant, that he was in possession under Thornton's authority, and that he was entitled to retain possession until twelve o'clock noon, which was the time when Thornton's lease expired.

On being himself sworn, Ogden denies the statement of Dunning, denied that he rented the premises of any one,

claimed *that he* was and had been owner for two years, and that he had rented the house during that period, and that in July, 1862, Thornton was in possession under a lease from him. That Thornton moved out the day before the trial and surrendered the premises to him.

Dunning, being recalled, testified that Thornton had paid him the rent, under the lease from the plaintiff, and Ogden further testified, that he had brought suit against Thornton to collect the rent under the lease from himself. Ogden testifies, that he had heard that previous proceedings had been taken to dispossess Thornton, but that he had no knowledge on the subject.

Upon Dunning's testimony, the plaintiff was entitled to recover possession of the premises. On Ogden's testimony, he was not so entitled. The witnesses contradicted each other in important particulars. The justice made his own conclusions from the disputed evidence, and I think there was sufficient evidence upon which to base them. I see no error in law, which justified the reversal, and think the judgment of the General Term should be reversed, and that of the justice affirmed. As so long a time has elapsed, no restitution should now be ordered.

WOODRUFF, MASON, GROVER, LOTT, JAMES and MURRAY, J. J., concurred with DANIELS, J., and were for affirmance, on the grounds stated in his opinion.

HUNT, Ch. J., was for reversal of the order of the General Term, and affirmance of the decision of the District Court, on the ground that the latter was final, the evidence being conflicting, as stated in his opinion.

The order of the General Term affirmed, and the restitution of the defendant in error to be carried out.