REARDON, Appellant, *v.* PATTERSON et al.,

Respondents.

[Submitted January 25, 1897.  Decided February 15, 1897.]

*Pledgee—Sale by—Action for Conversion of Collateral—*
*When can be Brought—New Trial—Evidence—Immaterial*
*Error.*

A pledgee of personal property who holds it as a security for the performance of a contract by the pledgor and who sells it for its full value without notice to him, and applies it in payment of the damages ascertained to be due for such non-performance, is not liable to the pledgor for the full value of the pledge.

SAME.—Before the pledgor can sue for the conversion, he must show that he was entitled to the possession, either by proving performance of the contract for which it was pledged as security or payment of the damages for non-performance.

NEW TRIAL.—Where the evidence is conflicting, the findings of facts by the court will not be disturbed by the appellate court.

EVIDENCE.—A witness for plaintiff testified that one of defendant's witnesses said to him "do you want to make three dollars; there is a subpoena, and there is three dollars in it; go and see Murray's (defendant's) lawyer, and get subpoenaed and there is three dollars in it." *Held*, that the testimony was immaterial and was properly stricken out.

SAME.—*Immaterial error.*—Where the testimony of a witness is stricken out, and then is subsequently admitted, the error, if any, in striking out the testimony is immaterial.

*Appeal from District Court, Silver Bow County.  J. J. McHatton, Judge.*

ACTION by Timothy Reardon against H. M. Patterson and T. J. Murray for the conversion of a school warrant.  Judgment for defendants, and plaintiff appeals.  Affirmed.

Statement of the case by the justice delivering the opinion.

This action was for the recovery of a school warrant originally issued to appellant (plaintiff below).  The judgment in it was rendered before the Codes of 1895 went into effect. The complaint alleges a conversion of the warrant by defendants.  The answer denies any conversion, and sets forth affirmatively that in July, 1893, the plaintiff, Reardon, and his partner, entered into a contract with the defendant Murray, to plaster the interior of a building belonging to Murray,

under the supervision of the defendant Patterson, who was an architect in charge of the work; that the said warrant was delivered to the said Patterson, to be held by him for Murray in lieu of a bond required of Reardon and his partner under the terms of said contract; that Reardon and his partner failed to perform their covenants in said contract, to the damage of defendant Murray in the sum of $960; and that thereupon Murray sold the warrant for its value, alleged in the complaint to be $483.30, and applied the proceeds on the damages he had sustained.    The replication denies the delivery of the warrant for the purpose alleged, denies that it was deposited with Patterson in lieu of a bond, and denies any breach of contract on the part of Reardon and his partner, and sets forth that, at the time Patterson turned over the warrant to Murray, it was in Patterson's possession only as a bond and guaranty for the performance of a contract for plastering in the Lynch building which Reardon and his partner had with the firm of White & Demars.    It also sets forth that Murray is still indebted to Reardon and his partner for plastering, under the terms of the Murray contract, in the sum of $276.33, and that a suit on a lien filed by them on Murray's building is still pending in court.    The evidence shows that, at the time the Murray contract was entered into, this warrant was in the possession of Patterson, to secure the performance of the White & Demars contract.    Reardon testifies :   "Along about the 1st of July, we entered into a contract with Murray to plaster his building. The question of a bond came up, and I said to Patterson: 'Of course, we will be through with the Lynch job long before the Murray job will be started, and that warrant can go as a bond on the Murray job.'    Patterson said that was all right.    *  *  *    There was a delay, and we got through with the Murray job long before the Lynch job, probably a month or more after that.''    The testimony of Reardon's partner is substantially the same as Reardon's in respect to this agreement as to the warrant.    Patterson's testimony is to the same effect. The evidence also shows that Reardon and his partner had had a settlement with White & Demars prior to the disposal of the

warrant by Murray, and that White & Demars make no claim to the warrant. The evidence as to whether or not Reardon and his partner complied with the terms of their contract for plastering the Murray building is conflicting. The court found for the respondents (defendants below). This appeal is simply from the order of the court denying appellant's motion for a new trial.

*John W. Cotter*, for Appellant.

*Corbett & Wellcome*, for Respondents.

BUCK, J.—The main specifications of error are that the evidence is insufficient to justify the trial court in finding that there was a breach of contract on the part of Reardon and his partner, and that it is also insufficient to justify any finding that the school warrant was deposited with Patterson as a guaranty for the performance of the Murray contract. The evidence as to the breach of contract was conflicting, and, under the well-known rule applicable, we cannot disturb this finding. Nor was the evidence insufficient to justify the finding that there was a pledge of the warrant. Upon that portion of Reardon's testimony (quoted in the statement) alone, the lower court had a right to decide that the warrant was delivered in place of the bond required by the contract. It appears clearly enough that Patterson held the warrant primarily to secure the performance of the White & Demars contract. There is no conflict, however, between White & Demars and respondents in respect to it. All right of White & Demars being eliminated, Murray's right alone to the warrant is for our consideration.

But appellant insists that, even upon the assumption that Murray had a right to hold the warrant, he could not dispose of it without notice of sale or a demand for its redemption. Murray sold it for its full value,—$483.30,—and has credited appellant in that sum upon the damages (in excess of it) which the trial court found he had sustained by reason of the breach of the contract on the part of Reardon and his partner. By

disposing of the warrant without giving Reardon an opportunity to redeem it, or any notice of sale, Murray was guilty of a conversion without doubt, and his liability for such a conversion doubtless would be the value of the warrant at the time of the conversion, with legal interest from that date. (See *Brunell* v. *Cook*, 13 Mont. 497, 34 Pac. 1015; *Gay* v. *Moss*, 34 Cal. 125; *Robinson* v. *Hurley*, 11 Ia. 410.) Still, do the rules of law as to a notice and demand invoked by appellant avail him under the facts of this case? He has received the benefit of what he might recover even if he could maintain his present action. Murray has credited him with the full value of the warrant. The reason for these rules as to notice and opportunity for redemption are not applicable. These rules are intended to protect the pledgor from a sacrifice of a pledge. By mere conversion of a pledge, a pledgee does not necessarily annul the contract upon which it rests. (See Jones on Pledges, § 420.) A conversion by a pledgee does not *per se* absolve the pledgor from the payment of the debt he has secured. As a rule, before a pledgor can recover the property pledged, or its value, in an action for conversion, he must establish a right of possession. Without right of possession such a suit is not maintainable. (See *Laubenheimer* v. *Bach, Cory & Co.* (decided at this term) 19 Mont. 177, 47 Pac. 803.) And the right to the possession of the property which he has pledged follows from the extinguishment of the debt secured, or a sufficient tender of payment of such debt. A tender of what was due Murray was essential for the establishment of the right of plaintiff to recover in this action. (*Robinson* v. *Hurley*, 79 Am. Dec. 497, and note on page 506; *Hancock* v. *Insurance Co.*, 114 Mass. 155; Jones on Pledges, § 748.)

There are two more specifications of error to be disposed of. A witness for plaintiff, in reply to a question, testified as follows in reference to a conversation he had had with a witness for defendants: "The conversation was, he called me across the street, and said, 'Hello, Bill, do you want to make three dollars?' I said, 'How, Jack?' and he said, 'Well, there is

a subpoena; go and see Murray's lawyer, and get subpoenaed, and there is three dollars in it.'" The trial court, on the ground that this answer was immaterial, struck it out. The ruling was correct.

Another witness for plaintiff, in answer to a question as to a conversation he had with a witness for defendants, testified as follows: "I had a conversation with John Gill within the last two weeks, on Main street. He came to me, and said, in in the presence of Mr. Gallagher, 'You want to subpoena me for a witness there.' I said to Mr. Gill, 'I have not got anything to do with the case.' He said, 'Well, I will see Tim (Reardon). He don't have very much to say to me, and I don't like to ask him.' I said, 'I have not got anything to do with it, but I can tell him what you say.' He said, 'I will make a first-class witness for you. I know that Murray has had miners working around there, picking up big planks, and dropping them on the floors.'" This answer was also stricken out, on the ground that it was immaterial. This last ruling may have been erroneous, but soon afterwards the same witness was allowed to testify to substantially what was contained in the answer excluded. The error, if any, was cured. The order denying a motion for a new trial is affirmed.

*Affirmed.*

PEMBERTON, C. J., and HUNT, J., concur.