FIRST NATIONAL BANK OF COLUMBUS, APPELLANT,
*v.* COIT, RESPONDENT.

(No. 6,109.)

(Submitted June 1, 1927. Decided June 22, 1927.)

[257 Pac. 469.]

*Conversion of Mortgaged Crops—Complaint—Landlord and Tenant — Forfeiture and Surrender of Lease — Effect on Rights of Third Persons—Filing of Chattel Mortgage—Notice to Whom—Costs—Mileage of Witnesses.*

Conversion—Complaint—Contents.

1. In an action in conversion of mortgaged chattels the plaintiff must show, if he would prevail, that the chattels in question were wrongfully taken by defendant, and that at the time of such taking he (plaintiff) had a general or special property interest in them and the right to their immediate possession.

Chattel Mortgages—On Crops not in Existence—Nature of Contract.

2. A mortgage on a crop not yet in existence but to be produced by the tenant mortgagor after acquisition of the right to produce crops thereon is an executory contract which will become binding only in the event the mortgagor brings such crop into existence and subject to defeasance upon his failure to do so, and if shown to have been in existence on a certain day, the lien of the mortgage attached at some time after its filing and before said day.

Landlord and Tenant—Forfeiture or Surrender of Lease—Right to Growing Crop in Landlord, When.

3. Whether the relation of landlord and tenant of farm lands upon default of the latter is terminated by the enforcement of the forfeiture provided for in the lease or by a mutual agreement to surrender it, as between the parties the rights of the tenant are transferred to the landlord and merged in his interest in the land on the latter's entry into possession and dominion over it, and in the absence of an agreement by the landlord to pay for the crop grown thereon, the tenant cannot thereafter assert any interest in or claim to it.

Same—Rights of Third Parties in Case of Forfeiture of Lease—How in Case of Voluntary Surrender.

4. Where third parties have acquired an interest in a leasehold estate through the tenant and the landlord enforces a forfeiture of

---

2. Mortgage on crops to be planted in the future, see note in 23 L. R. A. 452. See. also. 5 R. C. L. 407.

3. See 16 R. C. L. 1139, 1157.

the lease either by action or under its terms, the rights of such third parties fall with those of the tenant, but the landlord and tenant cannot, where rights of third parties are concerned, agree to a voluntary surrender of the lease.

Same—Forfeiture of Lease—Notice to Tenant may be Waived—What may Constitute Waiver.

5.  A provision in a lease of farm lands that the landlord may at his option terminate it upon the tenant's failure to perform the conditions subsequent contained in it, upon giving notice to the tenant, and enter into possession of the land and the growing crops, is for the benefit of the tenant, may be waived by him and is waived, as between him and the landlord, by abandonment of the premises and giving notice thereof to the latter.

Same—Surrender of Lease—Rights of Mortgagee of Crops.

6.  *Held,* that the rule that the surrender of a lease does not affect the rights of third parties who have acquired an interest in the leased premises does not include the mortgagee of crops to be harvested therefrom when the mortgage does not vest the mortgagee with an interest in the lease itself, in the absence of knowledge on the part of the landlord or notice to him of the existence of the mortgage; where he accepts a surrender and cancels the lease in secret without giving the mortgagee a chance to protect himself, he is liable to the latter.

Same—Mortgage on Crops—Filing of Mortgage not Notice to Landlord—Conversion.

7.  Under section 8279, Revised Codes of 1921, the filing of a chattel mortgage is constructive notice only to creditors of the mortgagor who seek to enforce their claims against the mortgaged property, or subsequent purchasers or encumbrancers in good faith for value; hence a landlord, not falling within either of the groups mentioned, in the absence of actual notice of a mortgage on growing crops, was not bound by the mortgage nor liable in an action for conversion for taking the crops on surrender of the lease, and evidence of the surrender was properly admitted.

Costs—Mileage of Witnesses—Evidence—Proper Exclusion.

8.  On examination of a witness as to whether he necessarily traveled the distance, mentioned in a memorandum of costs, from the state line, he being a student at a college in another state returning to his home in vacation time each year, a question whether in past years it had been his practice to return home during vacation was properly excluded, the question at issue not being determinable by showing what he had done in past years.

Same—When Witness Properly Disallowed Return Mileage to Place Other Than His Home.

9.  Where a student in a college in another state, his home being in Montana to which he returned in vacation time, attended a trial under subpoena after completion of the school year, the court upon being advised that there was no reason why he should return to the

---

5.  Waiver of notice of termination of lease, see note in **Ann. Cas.** **1916B, 313.**

place where the school was located on completion of the trial, properly struck out of the cost bill return mileage to the state line.

[1]  Chattel Mortgages, 11 **C. J.**, sec. 296, p. 596, n. 40, 45 New. Trover and Conversion, 38 Cyc., p. 2008, n. 4, p. 2024, n. 32, p. 2044, n. 58, p. 2078, n. 77, p. 2079, n. 84.

[2]  Chattel Mortgages, 11 **C. J.**, sec. 51, p. 444, n. 74.

[3]  Landlord and Tenant, 36 **C. J.**, sec. 1937, p. 697, n. 1, 10, p. 698, n. 12 New.

[4]  Landlord and Tenant, 36 **C. J.**, sec. 1930, p. 692, n. 3 New.

[5]  Landlord and Tenant, 36 **C. J.**, sec. 1937, p. 697, n. 5, p. 698, n. 12 New.

[6]  Landlord and Tenant, 36 **C. J.**, sec. 1930, p. 692, n. 3 New.

[7]  Chattel Mortgages, 11 **C. J.**, sec. 189, p. 511, n. 82, sec. 191, p. 513, n. 95; sec. 193, p. 517, n. 20, 21; sec. 227, p. 539, n. 36, 37, 38, p. 540, n. 39; sec. 296, p. 596, n. 45 New.

[8, 9]  Costs, 15 **C. J.**, sec. 298, p. 133, n. 79 New; sec. 445, p. 184, n. 76.

*Appeal from District Court, Sweet Grass County; H. J. Miller, Judge.*

ACTION by the First National Bank of Columbus, Montana, against Harvey Coit. From a judgment for defendant, plaintiff appeals. Affirmed.

*Messrs. O'Connor & Miller* and *Mr. M. L. Parcells,* for Appellant, submitted an original and a reply brief; *Mr. Parcells* argued the cause orally.

The chattel mortgage involved herein created a valid lien. (Secs. 8227, 8290, Rev. Codes 1921.) The supreme court of South Dakota, in passing upon an identical statute, held that where a tenant, before acquiring a lease on certain land, mortgaged the crop to be grown thereon, and subsequently leased the land and raised a crop, the mortgage was valid. (*Iverson* v. *Soo Elevator Co.,* 22 S. D. 638, 119 N. W. 1006; see, also, *Wheeler* v. *Becker,* 68 Iowa, 723, 28 N. W. 40; *Isbell* v. *Slette,* 52 Mont. 156, 155 Pac. 503; *Hackney* v. *Birely,* 67 Mont. 155, 215 Pac. 642; *Minneapolis Iron Store* v. *Branum,* 36 N. D. 355, L. R. A. 1917E, 298, 162 N. W. 543; *Rogers* v. *Frazier Bros. Co.* (Tex. Civ. App.), 108 S. W. 727; *Hogan* v. *Atlantic Elevator Co.,* 66 Minn. 334, 69 N. W. 1.)

The alleged surrender of the lease was subject to the mortgage. We regard the so-called surrender of the lease on July 5, 1924, as nothing more nor less than a subterfuge to avoid the mortgage to the bank and secure the defendant for the money which he was advancing to Grauman, and respectfully maintain that such advancement was made subject to the lien of that mortgage. The case of *Smith* v. *La Fayette & Bro.,* 29 Okl. 671, 119 Pac. 979, is directly in point. (See, also, *Person* v. *Wright,* 35 Ark. 169; *Jones* v. *Chamberlain,* 5 Heisk. (52 Tenn.) 210; *Embree & Keys* v. *Strickland,* 1 White & W. Civ. Cas. Ct. App. (Tex.), par. 1299.)

Plaintiff bank was a tenant in common with the owner of the premises and is entitled under its mortgage to the value of any interest which Grauman might have had in the crop converted. (*Crosby* v. *Woleben,* 149 App. Div. 337, 134 N. Y. Supp. 328, 14 A. L. R., note on page 1360; *Abernathy* v. *Uhlman,* 52 Or. 359, 93 Pac. 936, 97 Pac. 540; *Meador* v. *Cullison,* 52 Colo. 172, 120 Pac. 145.) As was said in *Crosby* v. *Woleben,* supra, the defendant is responsible for the relation which operated to vest title to an undivided one-half of the hay in Grauman. If he makes the cropper or occupant the owner of a definite part of the products of his farm, he must expect that third parties who act in reliance upon the ownership for which he is responsible and to which they have duly succeeded may maintain their claims.

Counsel for respondent contend that by the surrender of the lease under which Grauman claimed was "as completely blotted out as though it had never existed, both as against Mr. Grauman, the tenant, and against all persons claiming under him, including the appellant bank." We suggest that this is not the law and that from the time of the inception of the common law and the days of Coke, Blackstone and Kent down through the decisions of the courts of last resort of our several states, the rule has ever been: "A surrender does not divest the rights of persons not parties thereto." (Tiffany on Landlord and Tenant, sec. 191 (b), p. 1349.)

"Though the surrender operates between the parties as an extinguishment of the interest which is surrendered, it does not so operate as to third persons who at the time of the surrender had rights which such extinguishment would destroy; * * * so his surrender will not affect the mortgagee of the leasehold estate." (16 R. C. L. 1159, sec. 680; 35 Corpus Juris, 1096, sec. 287; *Brock* v. *Desmond & Co.,* 154 Ala. 634, 129 Am. St. Rep. 71, 45 South. 665; *Farnum* v. *Hefner,* 79 Cal. 575, 12 Am. St. Rep. 174, 21 Pac. 955; *Buttner* v. *Kasser,* 19 Cal. App. 755, 127 Pac. 811; *Golde Clothes Shop, Inc.,* v. *Silver,* 95 Conn. 678, 112 Atl. 264; *Cushner* v. *Westlake,* 43 Wash. 690, 86 Pac. 948; 18 Am. & Eng. Ency. of Law, 2d ed., pp. 366, 367; Taylor on Landlord and Tenant, 9th ed., sec. 111; 2 Current Law, 676; *Eten* v. *Luyster,* 60 N. Y. 252; *Gaskill* v. *Trainer,* 3 Cal. 334; *Allen* v. *Brown,* 60 Barb. (N. Y.) 39.)

*Messrs. Brown, Wiggenhorn & Davis,* for Respondent, submitted an original and a reply brief; *Mr. Horace S. Davis* argued the cause orally.

It is the contention of the respondent that the lease of March 8, 1924, under which Mr. Grauman held the premises from Briggs & Ellis Company, the landlord, was forfeited and canceled by the failure of the tenant at a seasonable time to cut, shock and stack the hay crop in question, then growing upon the premises, and that by reason of such forfeiture and consequent surrender, especially in the absence of actual notice of the rights claimed by the appellant under its mortgage, the leasehold interest of Mr. Grauman and together therewith all rights of the appellant in the growing crop then on the land were extinguished and terminated, so that when in September, 1924, the respondent, as the agent of the landlord, sold this crop to Ebert and Windsor he was dealing with the sole property of Briggs & Ellis Company in which the appellant bank as mortgagee had no interest or right whatsoever. In other words, by this forfeiture and surrender the respondent contends that the appellant's title

and right to possession, if it ever had any, failed; hence that it cannot maintain this action for conversion. (*Gregg* v. *Boyd,* 69 Hun, 588, 23 N. Y. Supp. 918; *Gammon* v. *Bull,* 86 Iowa, 754, 53 N. W. 340; *Woody* v. *Wagner,* 89 Wash. 429, 154 Pac. 819; *Union Farm Land Co.* v. *Isaacs,* 106 Wash. 168, 179 Pac. 84; *Plough Hardware Co.* v. *Bruce,* 81 Wash. 431, 142 Pac. 1144; *Hatfield* v. *Lawton,* 108 App. Div. 113, 95 N. Y. Supp. 451; *O'Leary* v. *Harris,* 89 N. J. L. 671, 99 Atl. 774; *Wensler* v. *Tilke,* 97 Kan. 567, 155 Pac. 946; *Agoure* v. *Plummer,* 175 Cal. 543, 166 Pac. 311; *Myer* v. *Roberts,* 50 Or. 81, 126 Am. St. Rep. 733, 15 Ann. Cas. 1031, 12 L. R. A. (n. s.) 194, 89 Pac. 1051; *Calhoun* v. *Kirkpatrick* (Tex. Civ. App.), 155 S. W. 686; 36 C. J. 105.)

The mortgage of the appellant bank was in the nature of an assignment pro tanto by Grauman of his right under the lease to demand and receive a share of the crops for 1924 if and when his part of the bargain were fulfilled. It is clear that Grauman, in default in the performance of his contract with Briggs & Ellis Company, could not prevail in a suit brought or dependent upon this lease; he could not plead or prove performance of the conditions precedent to his right of recovery. It follows that what Grauman himself could not do, his mortgagee, that is, his assignee for the purpose of security of a portion of his rights under this lease, likewise may not do, especially in the absence of any notice whatsoever imparted by the mortgagee bank to the landlord, or its agent, the respondent, until long after the transaction from which this lawsuit arose had been concluded.

At best the rights of the appellant are not unlike the rights of an assignee of a chose in action; the interest acquired by it under its mortgage amounts to nothing more than the right under certain circumstances to reduce crops of hay to possession through the title of the mortgagor and tenant as against an adverse claim of the landlord. Before the execution of this chattel mortgage, the tenant, John Grauman, was the owner of all the rights of the lessee created by the lease of March 8, 1924,

as against the landlord, conditional of course upon performance by him; after the execution of the mortgage to the appellant bank certain of the rights which John Grauman previously had had against his landlord by virtue of his lease were transferred, that is, assigned to the appellant bank, conditional still, however, upon performance on the part of the lessee. In other words, the appellant bank in this case occupies the position of the assignee of a chose in action, which prior to the execution of the chattel mortgage in question had been held in its entirety by Grauman against the Briggs & Ellis Company. As against Grauman, such a mortgage or assignment may be good without notice to the obligor. But as between the obligor, the Briggs & Ellis Company, and the assignee, the appellant bank, it seems sound law that the obligor is not bound in the absence of notice of the rights claimed under the assignment or mortgage by the assignee or mortgagee in this case. (Sec. 9068, Rev. Codes 1921; *Cornish* v. *Woolverton*, 32 Mont. 456, 108 Am. St. Rep. 598, 81 Pac. 4; 5 C. J. 934; 2 R. C. L. 622.)

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The First National Bank of Columbus, asserting its right thereto by virtue of a chattel mortgage executed to it by a tenant on certain lands in Sweet Grass county, brought action to recover from Harvey Coit the value of one-half of a hay crop harvested from the lands and sold by him. Issue being joined, the cause came on for trial before the court and jury, and, at the close of all of the evidence, plaintiff moved for a directed verdict in its favor. This motion was denied and thereupon the court, on motion of the defendant, directed the jury to return a verdict in favor of the defendant. The verdict was returned accordingly and judgment entered thereon. Plaintiff has appealed from the judgment and has made ten assignments of error, which, however, raise but the questions hereinafter discussed.

The facts disclosed by the evidence, briefly stated, are as follows: The Briggs Ellis Company, a New Jersey corporation, authorized to do business in Montana, is and was at all times mentioned the holder of the record title to the lands on which the crops in question were raised, and, defendant was its agent in Montana, with authority to lease lands, collect rents, and generally conduct its affairs. In 1916 the Briggs & Ellis Company entered into a contract with the Sweet Grass Abstract & Audit Company, and it in turn contracted with one George W. Moore for the sale and purchase of these lands. Later, by some adjustment not disclosed, the Abstract Company was eliminated and Moore held possession of the lands directly from the Briggs & Ellis Company. At some time, not disclosed, Moore, being in default under his contract, surrendered it, and it was canceled, but the Briggs & Ellis Company entered into an agreement with him that, on condition he should make certain payments—evidently provided for, although the testimony leaves this to conjecture—it would give him a new five-year contract for the purchase of the lands. The payments were not made and the new contract was never executed.

In April or May of the year 1923, Moore, then in possession, leased the premises to one John Grauman on a crop-rental basis. Grauman evidently borrowed money from the plaintiff and secured its repayment by a chattel mortgage which included the crops. He had a partial settlement with the bank on November 27, 1923, and at that time executed a renewal note for the sum of $1,400 and a new chattel mortgage on his personal property, including one-half of the 1924 crop. This chattel mortgage was filed on December 4, 1923, in the office of the clerk and recorder of Sweet Grass county.

At some time between December 1 and 17, 1923, Moore, being in default and unable to make the payments required, surrendered his agreement or contract for a five-year contract for purchase, and, with the consent of Moore and Coit, the latter acting for the Briggs & Ellis Company, it was can-

celed and destroyed and the premises "turned back" to the Briggs & Ellis Company. At the same time, in settlement of all of the rights and claims of the parties, Moore executed and delivered to the Briggs & Ellis Company his promissory note for $629.16 which was "back dated" December 1, 1923, and thereafter Moore neither asserted nor claimed any interest in the property. Moore testified that at that time he knew nothing of the chattel mortgage from Grauman to the bank.

On December 17, 1923, after the cancellation of the Moore agreement, Grauman called upon Coit, and advised him that he (Grauman) had been working on the ranch for Moore, but that he could no longer remain on the ranch, as he was without money and the bank had taken all of his 1923 crop, and that he would have to get a job somewhere. Coit then employed him to build a fence and make other improvements on the ranch, and on March 8, 1924, Coit entered into a written lease of the premises, letting the ranch to Grauman for one year on a crop-rental basis, and Grauman occupied the premises, under the lease, up to July 3, 1924, when he notified Coit that he was without money to put up the hay and could not secure money from the banks and would have to quit. The first crop of alfalfa was then ready to cut and would suffer if not cut at once. With this situation confronting him, and his tenant refusing to continue under the lease, the manager suggested hiring Grauman to do the work. Terms were discussed and the discussion resulted in the cancellation of the lease and the execution on July 5, 1924, of an agreement whereby Grauman was employed to put up the hay for the Briggs & Ellis Company in consideration of which the company was to pay to him, on a sale of the hay, an amount equal to one-half of the proceeds, "less all money advanced or paid" to Grauman in the meantime. These were the terms usually made by Coit in hiring hay put up on the company's ranches.

Coit advanced the necessary expense money and Grauman put up the hay; it was sold by Coit in September, 1924, and

Coit paid to Grauman the sum of $888.75; Grauman left the premises. Coit had no actual knowledge of the existence of the chattel mortgage or of any claim made by the plaintiff until the spring of 1925, when demand was made upon him by counsel for the plaintiff. Neither the complaint nor the testimony contains a suggestion of fraud or collusion between defendant, or his principal, and Grauman, in thus canceling the lease and entering into and executing a new agreement.

On these facts plaintiff grounds its charge that defendant was guilty of conversion of the amount so paid to Grauman.

1. In an action such as this, i. e., an action in conversion, [1] in order to prevail, the plaintiff must show that the chattels were wrongfully taken by the defendant and that, at the time of such taking, the plaintiff had a general or special property interest in them and the right to the immediate possession thereof. (*Wetzel* v. *Power,* 5 Mont. 214, 2 Pac. 338; *Reardon* v. *Patterson,* 19 Mont. 231, 47 Pac. 956; *Glass* v. *Basin & Bay State Min. Co.,* 31 Mont. 21, 77 Pac. 1047; *Shipler* v. *Potomac Copper Co.,* 69 Mont. 86, 220 Pac. 302; *Wray* v. *Great Falls Paper Co.,* 72 Mont. 461, 234 Pac. 486.)

2. The acts of dominion over the chattel in dispute are the taking of possession and cutting the hay in July and the sale of the hay in September, 1924, and if on those dates the plaintiff was entitled to the immediate possession of the hay under the chattel mortgage, which was then a valid and existing lien against the hay, those acts constituted conversion. (*Harringon* v. *Stromberg-Mullins Co.,* 29 Mont. 157, 74 Pac. 413; *Moore* v. *Crittenden,* 62 Mont. 309, 204 Pac. 1035; *First Nat. Bank* v. *Montana Emporium Co.,* 59 Mont. 584, 197 Pac. 994.)

3. Plaintiff makes the contention that it is not clear from the record that Grauman's lease from Moore did not cover the season of 1924; but it is immaterial whether it did or not, as that lease had either expired in the spring of 1924, or was surrendered when Grauman accepted a lease from the Briggs & Ellis Company on March 8, 1924 (2 Tiffany on Landlord

and Tenant, 1323; *Otis* v. *McMillan*, 70 Ala. 46; *Welcome* v. *Hess*, 90 Cal. 507, 25 Am. St. Rep. 145, 27 Pac. 369; *Coe* v. *Hobby*, 72 N. Y. 141, 28 Am. Rep. 120), and the rights of the plaintiff must be determined with respect to the rights of Grauman under this latter lease.

4. Grauman, therefore, mortgaged to plaintiff property not [2] yet in existence, to be produced upon the lands after he had acquired the right to produce crops therefrom. The mortgage was merely an executory contract which would become binding only in the event he thereafter brought such crops into existence and subject to be defeated, if he failed to do so; but as the crop was shown to have been in existence on July 3, 1924, the lien attached at some time after the filing of the mortgage on December 4, 1923, and before July 3, 1924. (Sec. 8275, Rev. Codes 1921; *Isbell* v. *Slette*, 52 Mont. 156, 155 Pac. 503; *Hackney* v. *Birely*, 67 Mont. 155, 215 Pac. 642.)

5. This being the situation in July, 1924, the lessee being [3] then in default and having full knowledge that he had mortgaged his right to a share of the crop, and the landlord having no knowledge or notice thereof, unless the filing of the mortgage gave him constructive notice, the landlord was in a position to declare a forfeiture of the lease, or the parties might mutually agree to a surrender of the lease, unless the rights of the plaintiff were such as to prevent this action.

6. As between the parties to the lease, it is immaterial whether the action taken constituted the enforcement of a forfeiture or a surrender. In either event all of the rights and all of the interest of the tenant are transferred to the landlord and merged in his interest in the premises on the landlord's entry into possession and exercise of dominion over the premises (2 Tiffany on Landlord and Tenant, 1348; *Welcome* v. *Hess*, 90 Cal. 507, 25 Am. St. Rep. 145, 27 Pac. 369; *Rauer's Law Co.* v. *Third Street I. Co.*, 21 Cal. App. 183, 131 Pac. 77; *Bernard* v. *Renard*, 175 Cal. 230, 3 A. L. R. 1076, 165 Pac. 694), and, in the absence of an agreement by the

landlord to pay for the crop, the tenant cannot thereafter assert any interest in or claim to it (*Silva* v. *Bair,* 141 Cal. 599, 75 Pac. 162).

7. Where, however, third parties have acquired an interest [4] in the leasehold estate, through the tenant, a different rule prevails as to forfeiture and surrender; when a forfeiture is enforced either by appropriate action in court or under the terms of the lease, the rights of third parties fall with those of the tenant (2 Tiffany on Landlord and Tenant, sec. 194h), while there can be no strictly voluntary surrender of a lease in which third parties have acquired such an interest (2 Tiffany on Landlord and Tenant, sec. 191b, p. 1349; 18 Am. &. Eng. Ency. of Law, 2d ed., 366; *Cuschner* v. *Westlake,* 43 Wash. 690, 86 Pac. 948; *Eten* v. *Luyster,* 60 N. Y. 252; *Gaskill* v. *Trainer,* 3 Cal. 334).

8. The Briggs &.Ellis lease to Grauman provides that, in [5] the event the tenant fails to perform the conditions subsequent therein contained, the landlord may, at its option, terminate the lease and enter into possession of the premises and of all growing crops, upon giving to the lessee ten days' notice of its intention to do so, during which period the lessee may cure the default. This provision as to notice is clearly for the benefit of the lessee—to guard against forfeiture without giving the lessee an opportunity to make good his default —and may therefore be waived by the tenant (35 C. J. 1050), and, as between the landlord and tenant, the notice is waived by the abandonment of the premises and the giving of notice thereof to the landlord (*Munson* v. *Baldwin,* 88 Wash. 379, 153 Pac. 338).

To have given the ten days' notice in writing to a tenant present in person, repudiating the lease and declaring that he could not go on with it, would have been an idle act not required by law. (Sec. 8761, Rev. Codes 1921.) The act of the parties in July, 1924, therefore, partook of the elements of a forfeiture declared under the express terms of the lease (2 Tiffany on Landlord and Tenant, sec. 194), as well as the

elements of a surrender of the lease. However, as some au-
thorities hold that such a waiver of one of the requirements
of a forfeiture reduces it to a surrender (*Gaskill* v. *Trainer*,
above), and, as both parties hereto have treated the action of
the parties to the lease as a surrender, we will so consider it.

9. A careful examination of the authorities cited by plain-
[6] tiff and by the text-writers, as well as those disclosed by
independent investigation, discloses that the rule that a sur-
render cannot affect the rights of third persons concerns only
those persons who have acquired an interest in the "demised
premises," such as sublessees, mortgagees of the leasehold
estate and mechanics who have constructed improvements
thereon, with the knowledge of the landlord, and have duly
filed mechanics' liens thereon; and in all of the cases the ele-
ment of actual notice to, or knowledge by, the landlord, of
the encumbrance, appears, while in no case to which our at-
tention has been directed has the question of the effect of
constructive notice been considered.

The case most nearly approaching analogy to the instant
case to which our attention has been directed is that of *Crosby*
v. *Woleben*, 149 App. Div. 337, 134 N. Y. Supp. 328, wherein
it appears that defendant leased a grape farm to one Stebbins
on condition that he pick the grapes, pack them in containers
furnished by the parties jointly, and market them, and that
each party should receive one-half of the proceeds. After
the grapes were developed, but still on the vines, Stebbins
assigned the contract, either in satisfaction of, or as security
for, a pre-existing debt, and notified defendant of what he had
done. He later entered into a written agreement surrender-
ing the lease, whereupon defendant caused the grapes to be
picked, packed and marketed, and refused to divide with plain-
tiff, and action in conversion followed. Three out of five
justices joined in an opinion, wherein it is held that the agree-
ment between the landlord and tenant constituted them ten-
ants in common of the grapes, and that the interest of one
could not be defeated by a surrender of the contract after

one tenant in common had assigned his interest   The presiding justice and one other dissented, declaring that the assignment did not vest the plaintiff with any interest in the lease, and that the lessee, having defaulted under the terms of the lease, and the plaintiff having made no attempt to perform on the part of the lessee, should not recover; that the conclusion reached by the trial court and sustained by the majority opinion "is repugnant to our ordinary sense of justice, and that it cannot be supported by any principle of law."

The case differs from that before us in two important particulars: (1) It was shown that the landlord had actual notice of the assignment, and therefore might have been required to give notice to the assignee of the lessee's default, or be chargeable with collusion, and (2) the decision is based upon the holding that, under the particular wording of the lease, the landlord and tenant became tenants in common of the grapes—the crops to be produced.   This constituted the tenant what we have termed a "cropper," in the case of *Cook-Reynolds Co.* v. *Wilson,* 67 Mont. 147, 214 Pac. 1104, wherein it is pointed out that a "cropper" is but a servant having no interest in the land, while a tenant has an estate in the land for the term of his lease and a right of property in the crop; he dividing the crop, if a share thereof constitutes the rent.   Therefore, when a "cropper" assigns his right, he assigns all that he has under his contract; while a tenant, assigning or mortgaging his interest in the crop, does not vest the assignee or mortgagee with any interest in the "demised premises," but merely in the fruits of his contract.

We therefore hold that the rule that the surrender of a lease does not affect the rights of third parties who have acquired an interest in the demised premises does not include the mortgagee of the crops to be harvested from leased premises when the mortgage does not attempt to vest in the mortgagee an interest in the lease itself, in the absence of knowledge on the part of the landlord or notice to him of the existence of the mortgage.   (See *Freeman* v. *Ogden,* 40 N. Y. 105.)

10. If, on the other hand, the landlord has notice of the existence of the mortgage, and thereafter accepts a surrender and cancels the lease in secret, and without giving the mortgagee a chance to protect himself, we would say there was collusion or fraud shown, and the conclusion reached in *Crosby* v. *Woleben,* above, holding the landlord liable to the third party, is sound.

11. Counsel for plaintiff seem to concede that knowledge of [7] the existence of the mortgage must be brought home to the defendant in order to prevail, but insist that he had constructive notice thereof by the filing of the mortgage as provided for in section 8279, Revised Codes of 1921, which declares that: "every mortgage of personal property, made, acknowledged, and filed, as provided by the laws of this state, is thereupon, if made in good faith, good and valid as against the creditors of the mortgagor, or subsequent purchaser, or encumbrancers, from the time it is so filed, and for the period of two years and sixty days thereafter," etc.  In construing this section this court has said: "As between mortgagor and mortgagee, the mortgage is just as valid and binding whether it be filed or whether it conform to any of the requirements of the statute. (*Reynolds* v. *Fitzpatrick,* 23 Mont. 52, 57 Pac. 452.)  The same rule prevails as between the mortgagor or mortgagee and a stranger.  Indeed, the unfiled informal chattel mortgage is perfectly valid as against everyone except (1) creditors of the mortgagee [mortgagor] who seek to enforce their claims against the mortgaged property, or (2) subsequent purchasers or encumbrancers of the property in good faith for value (6 Cyc. 1056–1066) and since the purpose of filing a chattel mortgage is to protect only bona fide creditors, and subsequent purchasers or encumbrancers, the filing imparts notice only to such" (*Isbell* v. *Slette,* above).

It is evident that a clerical error crept into the above statement designated (1), as the class referred to clearly refers to creditors of the *mortgagor* and not those of the "mortgagee." It is likewise apparent from the whole text of the opinion that

the declaration that an unfiled chattel mortgage is both valid and binding upon strangers to it who do not come within the two classes mentioned in the statute quoted is too broad and goes beyond the express holding of the court. It is true that such a mortgage is ''valid'' as against all persons except the classes mentioned, but it is ''binding'' only upon the parties thereto and such other persons, not within the classes mentioned, as have actual notice of its existence, and, as the filing does not impart notice to such others, the filing does not change the situation. Thus the closing paragraph of the opinion declares that: ''T. L. Isbell, as lessee of this father's homestead, did not fall within either of the groups mentioned in our statute. He was not a creditor seeking to enforce his claims against the mortgaged property, and he was not a purchaser or encumbrancer of the property. As against him, the chattel mortgage would have been just as valid if it had not been filed at all, and, by filing it, his situation was not altered in the least. The mortgage, though filed, did not impart constructive notice to him, and, since it is not contended that he had actual notice of its existence, he cannot be bound by it in any sense.''

So here, as the defendant did not fall within either of the groups mentioned in the statute, the filing of the mortgage did not impart constructive notice of its existence to him, and, in the absence of actual notice thereof and of fraud or collusion, he is neither bound by the mortgage nor liable in this action.

12. From the foregoing it is apparent that no error was committed in admitting testimony as to the surrender and contract of hiring and of the fact that defendant had no actual notice or knowledge of the existence of the chattel mortgage; nor was error committed in directing verdict in favor of the defendant. The plaintiff could have protected itself by giving notice to the lessor and should have done so. Defendant, acting for his principal, did no more than he was entitled to do under the terms of the lease and secured nothing more than he would have secured, had the conditions of the lease

been complied with either by the lessee or the mortgagee. The judgment must be affirmed.

13. On the entry of judgment defendant filed his memo-[8, 9] randum of costs, which contains the following item: "Frederick P. Coit, 2 days at $3 per day, $6, and 428 miles from state line and return at 10 cents per mile, $85.60."

Plaintiff thereupon, by motion to tax costs, demanded that the mileage item be stricken as neither a proper item of cost nor a necessary disbursement. At the hearing on the motion it was shown that this witness was a son of defendant twenty-one years of age and in attendance at the University of Washington, and at the time of the trial the school year was completed; that he received a subpoena through the mail and attended the trial in obedience to the subpoena. He testified that at the time he left Seattle there was nothing to require his continued residence there or his immediate return. Plaintiff then inquired whether it had not been his practice in past years to return to the parental roof for the summer vacation, to which question the court sustained an objection. The plaintiff then offered to prove by the witness that such had been his practice in past years, to which offer the court sustained an objection. Plaintiff predicates error upon these rulings and upon the court's refusal to strike the mileage from the bill of costs.

The question in dispute was as to whether the witness necessarily traveled the distance named in attendance upon the court, and that question could not be determined by showing what he had done in the past. No error was therefore committed in excluding the evidence. On cross-examination the witness testified that his intention in the summer of 1926 was to remain in Seattle and secure a vacation position; that he was seeking such a position at the time he received the subpoena; and that, the trial being then over, he had written to Seattle, seeking employment, and intended to return there in a short time. On this showing the court struck from the

memorandum the return mileage of the witness and thus allowed defendant the amount charged as mileage one way only. There is nothing in the record to warrant our disturbing the finding made by the court from the above testimony (*Spaulding* v. *Maillet,* 57 Mont. 318, 188 Pac. 377; *Chilcott* v. *Rea,* 52 Mont. 134, 155 Pac. 1114), so far as it affects the plaintiff, and the defendant is not complaining.

Judgment affirmed.

*'Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and GALEN concur.